Mattie TOLTON and Ronald Tolton,
Plaintiffs–Appellants,

v.

AMERICAN BIODYNE, INC., et
al., Defendants–Appellees.

No. 93–3893.

United States Court of Appeals,
Sixth Circuit.

Argued July 7, 1994.

Decided March 3, 1995.

Lester S. Potash (argued and briefed), Cleveland, OH.

Jack E. Fuchs (argued and briefed), Jane E. Garfinkel, Sandra P. Kaltman, Thompson, Hine & Flory, Cincinnati, OH, Terrance P. Gravens, Coin, Gravens & Franey, Cleveland, OH, for American Biodyne, Inc.

William H. Baughman, Jr., Patrick M. Duke (briefed), John M. Baker, Sr., Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, for Thomas McArthy, Ph.D.

Craig S. Cobb, Kenneth J. Knabe, Theodore M. Dunn (briefed), Myra Staresina, Janik & Dunn, Cleveland, OH, for Michael Schur, Ph.D.

William J. Coyne, Sr. (briefed), Cleveland, OH, for St. Vincent Charity Hosp. & Health Center, M. McKenny, R.N., Fink, R.N.

Janis L. Small (argued and briefed), Jacobson, Maynard, Tuschman & Kalur, Cleveland, OH, for Dr. Stavridis.

Janis L. Small, Jacobson, Maynard, Tuschman & Kalur, Douglas G. Leak, Jacobson, Maynard, Tuschman & Kalur, Cleveland, OH, for C. Alonzo, M.D., Dr. Kirkland, Lakeland Emergency Associates, Inc.

William J. O'Neill, Thomas P. Meaney, Jr., Dan L. Makee (briefed), McDonald, Hopkins, Burke & Haber, Cleveland, OH, for CIGNA Health Plan of Ohio.

Before: KENNEDY and SILER, Circuit Judges; and CHURCHILL, District Judge.[*]

KENNEDY, Circuit Judge.

Plaintiffs, Mattie Tolton and Ronald Tolton ("plaintiffs"), appeal the District Court's grant of summary judgment in this action arising from the suicide of Henry V. Tolton ("Tolton").[1] Plaintiffs sued CIGNA Health Plan of Ohio, Inc., American Biodyne, Inc., Thomas McArthy, Ph.D., Michael Schur, Ph. D., St. Vincent Charity Hospital ("St. Vincent"), Dr. Cohn, Dr. Stavridis, Dr. Alonzo, Dr. Kirkland, Lakeland Emergency Associates, Margaret McKenny, R.N., and Mary Fink, R.N. Plaintiffs' claims include: wrong-

ful death; medical malpractice; negligent and intentional refusal to authorize inpatient treatment for Tolton in reckless disregard of his safety and in violation of the insurance policy; insurance bad faith; breach of contract; liability of CIGNA for the alleged malpractice of Biodyne; negligent retention of the services of American Biodyne by CIGNA; loss of consortium; and violations of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. The District Court granted summary judgment in favor of defendants.

On appeal, plaintiffs assign three errors. First, plaintiffs contend that the District Court erroneously concluded that plaintiffs' state law claims against CIGNA, American Biodyne, Schur, and McCarthy were preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et. seq. Second, plaintiffs contend that the District Court erred in granting summary judgment in favor of St. Vincent regarding the EMTALA claim. Finally, plaintiffs argue that the District Court erroneously granted summary judgment on the state law claims in favor of St. Vincent, Dr. Cohn, Dr. Stavridis, Dr. Alonzo, Dr. Kirkland, Nurse Fink, Nurse McKenny, and Lakeland Emergency Associates. For the following reasons, we affirm.

## I. Facts

Henry V. Tolton was employed as a Recruiter/Public Relations Specialist by United Way–Big Brothers/Big Sisters of Greater Cleveland ("United Way"). United Way provided group health insurance to Tolton and other employees through Connecticut General Life Insurance Company. This plan, called the Exclusive Provider Plan, was administered by CIGNA Health Plan of Ohio ("CIGNA") pursuant to a managed care option. The parties concede that the plan is a qualified employee benefit plan pursuant to ERISA, 29 U.S.C. § 1002(1). CIGNA contracted with American Biodyne ("Biodyne")

---

[*] The Honorable James P. Churchill, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Ronald Tolton brings this action as administrator of the estate of Henry V. Tolton for the benefit of Mattie Tolton, surviving spouse, pursuant to Ohio Revised Code § 2125.02.

to provide mental health benefits to eligible plan participants.

On November 29, 1989, Tolton visited Biodyne for an evaluation and intake interview with Thomas McCarthy, a psychologist who performed utilization review. Tolton told McCarthy that he was addicted to crack cocaine and wanted to "get off the stuff." Pursuant to Biodyne protocol, McCarthy challenged Tolton to remain drug free for five days and to return if he successfully met the challenge. On December 5, 1989, Tolton telephoned Biodyne and spoke with Michael Schur, another psychologist. After learning that Tolton had last used drugs two days before, Schur challenged Tolton to remain drug free until December 7, 1989. Tolton expressed displeasure with Biodyne's "challenge" policy.

On December 7, 1989, Tolton contacted Biodyne again. Tolton refused to see McCarthy, but agreed to meet Schur the next day. On December 8, 1989, Schur offered Tolton an outpatient program and scheduled a follow-up appointment in seven days. Tolton failed to keep the appointment. On January 18, 1990, Tolton telephoned Biodyne and stated that he was suicidal. Tolton, however, hung up before he could be connected with a health care practitioner. Tolton then called CIGNA and again expressed suicidal thoughts. Schur called Tolton, and Tolton stated that he was not suicidal and made an appointment to see Schur that afternoon. Tolton requested inpatient care, which was not authorized.

Tolton next presented himself at the emergency room of St. Vincent Charity Hospital on January 18, 1990, seeking treatment for his suicidal thoughts. St. Vincent contracts with Lakeland Associates to staff its emergency room with physicians. Dr. Alonzo examined Tolton and noted Tolton's intention to commit suicide with a gun. Mary Fink, a registered nurse, was on duty at the emergency room. Fink called Biodyne to discuss Tolton's condition. Tolton was referred to the East Side Crisis Shelter, where he remained for five days.

On January 23, 1990, Tolton was admitted to Bradley House, a state supported thirty-day residential drug and alcohol treatment program. Subsequently, on February 5, 1990, Tolton was admitted to New Joshua Center, a ninety-day treatment program, but did not complete the program.

Tolton returned to St. Vincent's emergency room on February 18, 1990, where he was evaluated by a doctor on duty. According to hospital records, Tolton stated that he did some "terrible thing last night—threatened a lady [with] a knife and would have killed her and himself if he'd had a gun." Tolton also stated that he was very suicidal. Margaret McKenny was on duty as a nurse. Tolton was referred again to the East Side Crisis Shelter, and, after he refused, to his treating physician, Dr. Gebert.

On February 19, 1990, Tolton received treatment at the Family Practice Center of University Hospitals of Cleveland. At this time, Tolton signed a statement agreeing to see either Dr. Frank, a psychiatrist, or Dr. Gebert daily. Until March 2, 1990, Tolton met with either Gebert or Frank daily. On March 2, 1990, Tolton was referred by Bradley House to Orca house, another ninety-day state supported treatment program. Tolton visited University Hospitals again on March 7th, pledging not to commit suicide without first talking with Dr. Frank. Tolton left Orca house on March 17, 1990. On March 23, 1990, Tolton committed suicide.

Plaintiffs brought this action against defendants in state court. Pursuant to 28 U.S.C. §§ 1441, 1446, CIGNA removed the action from the Cuyahoga County Court of Common Pleas to federal court based upon ERISA preemption. Plaintiffs then amended their complaint to include a cause of action under ERISA. The District Court granted summary judgment in favor of CIGNA, Biodyne, McCarthy and Schur, holding that plaintiffs' state law claims were preempted by ERISA. The District Court granted summary judgment on the EMTALA claims in favor of McKenny, Fink, St. Vincent, Lakeland Emergency Associates, Cohn, Kirkland, Stavridis, and Alonzo, holding that plaintiffs did not allege that Tolton was in imminent danger of death when he sought treatment at St. Vincent's emergency

room or that he was denied treatment due to his inability to pay.

## II. Standard of Review

██ We review a grant of summary judgment de novo. *See Kraus v. Sobel Corrugated Containers, Inc.,* 915 F.2d 227, 229 (6th Cir.1990). Summary judgment is appropriate if a party, after adequate opportunity for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

## III. The ERISA Claims

### A. *Removal*

As a threshold matter, plaintiffs argue that the District Court was without subject matter jurisdiction and should have remanded the case to state court. Specifically, plaintiffs contend that their complaint alleged state claims, and that they are neither participants nor beneficiaries in an ERISA plan. Plaintiffs argue, therefore, that removal based upon ERISA preemption was improper.

██ Generally, the well-pleaded complaint rule bars removal of a case to federal court based upon a federal defense. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). "One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* Applying this corollary to ERISA, the Supreme Court held that a state cause of action may be removed to federal court if the cause of action is preempted by ERISA and falls within the scope of ERISA's civil enforcement provision, section 502(a). *Id.* at 66, 107 S.Ct. at 1547–48; *see also Alexander v. Electronic Data Systems Corp.,* 13 F.3d 940, 945 (6th Cir.1994). In the case at hand, plaintiffs' claims that arise from an allegedly improper denial of benefits to an ERISA beneficiary fall squarely within section 502(a). *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 52, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987). Furthermore, plaintiffs, who brought this action as representatives of Tolton's estate, have standing under ERISA. *Cf. Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272, 1277 (6th Cir.1991) (holding that a health care provider who was a valid assignee of ERISA benefits had standing under ERISA), *cert. dismissed,* —— U.S. ——, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992). Removal, therefore, was proper.

██ Additionally, plaintiffs are only challenging removal after summary judgment was granted against them. In *Morda v. Klein,* 865 F.2d 782, 784 (6th Cir.1989), this Court, following *Grubbs v. General Electric Credit Corporation,* 405 U.S. 699, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1972), held that "when a case is improperly removed but is tried to judgment on the merits without objection, a party waives his right to later raise the issue of lack of subject matter jurisdiction at the time of removal" if the action could have been brought initially in federal court. Plaintiffs' initial complaint, which stated a claim under EMTALA, could have been filed in federal court. *Morda,* therefore, precludes plaintiffs from challenging removal at this time.[2]

### B. *ERISA Preemption*

██ ERISA was enacted to replace a patchwork scheme of state regulation of employee benefit plans with a uniform set of federal regulations. *See FMC Corp. v. Holliday,* 498 U.S. 52, 56–60, 111 S.Ct. 403, 406–09, 112 L.Ed.2d 356 (1990). "The pre-emption clause [of ERISA] is conspicuous for its

---

**2.** We also note that after removal, plaintiffs amended their complaint to include an ERISA cause of action. Amending a complaint after removal cures a jurisdictional defect. *See Brough v. United Steelworkers of America, AFL–CIO,* 437 F.2d 748, 750 (1st Cir.1971).

breadth." *Id.* at 58, 111 S.Ct. at 407. ERISA preempts all state laws that "relate to" employee benefit plans, whether or not the state laws are designed to affect employee benefit plans. *Id.* at 58, 111 S.Ct. at 407–08. *See also* 29 U.S.C. § 1144(a). The first step in our analysis, therefore, is to determine if the state laws under which plaintiffs bring their claims against CIGNA, American Biodyne, Schur and McCarthy "relate to" United Way's benefit plan. Plaintiffs' state law claims include wrongful death, improper refusal to authorize benefits, medical malpractice, and insurance bad faith. These claims all arise from American Biodyne's refusal to authorize psychiatric benefits to Tolton under the plan. Plaintiffs' claims against these defendants, therefore, clearly "relate to" the benefit plan. *See Pilot Life*, 481 U.S. at 48, 107 S.Ct. at 1553 ("The common law causes of action [tortious breach of contract, breach of fiduciary duties, and fraud in the inducement] raised in [plaintiff's] complaint, each based on alleged improper processing of a claim for benefits under an employee benefit plan, undoubtedly meet the criteria for pre-emption....").

The fact that Tolton was refused benefits pursuant to utilization review does not alter our preemption analysis. In *Corcoran v. United Healthcare, Inc.*, 965 F.2d 1321 (5th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992), an ERISA-plan participant sued United Healthcare, which performed utilization review for the plan, for wrongful death of an unborn child. On the basis of the utilization review, plaintiff was denied authorization for hospitalization and lost her fetus. *Id.* at 1324. The Fifth Circuit held that ERISA preempted the state tort claim because United Healthcare was determining the availability of benefits under the plan. *Id.* at 1331. Other Circuits have also reached the same conclusion. *See Kuhl v. Lincoln National Health Plan*, 999 F.2d 298, 302–03, (8th Cir.1993) (ERISA preempted wrongful death claim based upon delayed preauthorization for surgery), *cert. denied,* — U.S. —, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994); *Spain v. Aetna Life Ins.*

*Co.*, 11 F.3d 129, 131 (9th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1612, 128 L.Ed.2d 340 (1994) (ERISA preempted wrongful death claim based on withdrawal of authorization for surgery). Similarly, in the case at hand, American Biodyne and its employees were determining what benefits were available to Tolton under the plan.[3]

Moreover, in *Pilot Life*, the Supreme Court held that

> Congress clearly expressed an intent that the civil enforcement provisions of ERISA § 502(a) be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits, and that varying state causes of action for claims within the scope of § 502(a) would pose an obstacle to the purposes and objectives of Congress.

481 U.S. at 52, 107 S.Ct. at 1555. Utilization review is a means of processing claims, and, therefore, falls within the scope of § 502(a).

Our analysis, however, does not end here. Although ERISA preempts state laws that "relate to" ERISA plans, ERISA also contains a "savings clause." The "savings clause" provides that state laws "regulat[ing] insurance" are saved from preemption. *See* 29 U.S.C. § 1144(b)(2)(A). Plaintiffs' complaint includes a claim of "insurance bad faith." In *Pilot Life*, however, the Supreme Court held that Mississippi's law of bad faith was not saved from preemption because it was derived from tort and contract principles and was not aimed solely at the insurance industry. *See* 481 U.S. at 50, 107 S.Ct. at 1554. The Court also reasoned that the bad faith claim did not fit under the McCarran-Ferguson Act's definition of the "business of insurance." *Id.* at 50–51, 107 S.Ct. at 1554–55. Specifically, the law of bad faith did not spread risk and only tangentially affected the relationship between the insurer and policy holder. *Id.* Applying *Pilot Life*, this Court held that a state claim of insurance bad faith, even if only applicable to the insurance industry, was not saved. *See International Resources, Inc. v. New York Life Insurance*

---

**3.** Plaintiffs do not allege that there was a doctor-patient relationship between Tolton and either Schur or McCarthy.

*Co.,* 950 F.2d 294, 300 (6th Cir.1991), *cert. denied,* ── U.S. ──, 112 S.Ct. 2941, 119 L.Ed.2d 565 (1992). Plaintiffs' claims of insurance bad faith, therefore, are not saved.

■ Nevertheless, plaintiffs argue that ERISA cannot preempt their state law claims because ERISA provides no adequate remedy for the wrongs they allege. Although ERISA provides a remedy for the improper denial of benefits—it is not the remedy that plaintiffs desire.[4] Plaintiffs misconstrue the nature of ERISA preemption. That ERISA does not provide the full range of remedies available under state law in no way undermines ERISA preemption.[5] "The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Pilot Life,* 481 U.S. at 54, 107 S.Ct. at 1556. *See also Cromwell,* 944 F.2d at 1276 ("Nor is it relevant to an analysis of the scope of federal preemption that appellants may be left without remedy."). One consequence of ERISA preemption, therefore, is that plan beneficiaries or participants bringing certain types of state actions—such as wrongful death—may be left without a meaningful remedy. *See Corcoran,* 965 F.2d at 1338 ("The result ERISA compels us to reach means that the [plaintiffs] have no remedy, state or federal, for what may have been a serious mistake."); *Settles v. Golden Rule Ins. Co.,* 927 F.2d 505 (10th Cir.1991) (no remedy for wrongful death action against ERISA health plan.); *Kuhl v. Lincoln National Health Plan,* 999 F.2d at 298 (no

remedy for plaintiff alleging husband's death resulted in delayed preauthorization for surgery).

■ Plaintiffs alternatively argue that a broad interpretation of ERISA preemption violates their Fifth Amendment right to due process. We agree with those other circuits that have considered and rejected this argument. *See Kyle Railways v. Pacific Admin. Services,* 990 F.2d 513, 518–19 (9th Cir.1993) (ERISA preemption does not violate due process); *Brown v. Retirement Committee of Briggs & Stratton,* 797 F.2d 521, 527–28 (7th Cir.1986), *cert. denied,* 479 U.S. 1094, 107 S.Ct. 1311, 94 L.Ed.2d 165 (1987) (ERISA does not violate Fifth Amendment by depriving plaintiff of right to jury trial without due process). Plaintiffs' claims against American Biodyne, CIGNA, Dr. Schur and Dr. McCarthy, therefore, are preempted.

### IV. The EMTALA Claim

■ Plaintiffs argue that the District Court improperly granted summary judgment on the EMTALA action in favor of St. Vincent. EMTALA requires that hospitals screen individuals who come to the emergency room seeking treatment. *See Thornton v. Southwest Detroit Hospital,* 895 F.2d 1131, 1134 (6th Cir.1990). "Once a patient is found to suffer from an emergency medical condition, the hospital must give the patient treatment to stabilize that condition unless the patient can be transferred without danger of the patient's condition deteriorating." *Id.*

■ EMTALA was enacted to prevent hospitals from "dumping" patients who lacked health insurance or the ability to pay. *Id.; Cleland v. Bronson Health Care Group,*

---

4. Pursuant to § 502(a), a plan participant or beneficiary may bring an ERISA action to recover benefits due under the plan, enforce a participant's rights under the plan, or clarify rights to future benefits.

5. Plaintiffs mistakenly rely on this Court's opinion in *Perry v. P*I*E Nationwide Inc.,* 872 F.2d 157 (6th Cir.1989), *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1068 (1990), for the proposition that ERISA does not preempt state law if ERISA fails to provide a remedy for the wrong alleged. In *Perry,* this Court held that participants in an ERISA stock investment plan could bring state claims for common law fraud and misrepresentation based upon plaintiffs' alle-

gations that they were fraudulently induced into participating in the plan. *Id.* at 162. The Court considered whether § 502(a) provided a mechanism to address plaintiff's claims as part of its preemption analysis. *Id. Perry* did not hold, however, that a plaintiff could bring a state action for a claim that fell within ERISA's civil enforcement provision merely because ERISA did not provide the desired remedy. Indeed, *Perry* recognized that ERISA provides the exclusive remedy for claims that fall within § 502(a). *See id.* at 161 (state claim for fiduciary duty preempted because ERISA provides specific remedy).

**944**

*Inc.*, 917 F.2d 266, 269 (6th Cir.1990). EMTALA, however, does not limit its relief to patients who are indigent or uninsured, and a patient does not need to allege that denial of treatment was based on inability to pay to state a claim. *Id.* at 269–70. The District Court, therefore, erred by granting summary judgment on the basis that Tolton was neither indigent nor uninsured.

■ EMTALA allows plaintiffs to recover any damages they are entitled to under state law as a result of a hospital's failure to comply with EMTALA. *See* 42 U.S.C. § 1395dd(d)(2)(A). As a matter of Ohio law, however, plaintiffs cannot prove damages because of the time lapse and intervening medical treatment between Tolton's last visit to St. Vincent's and his suicide. *See Thrash v. U–Drive–It Co.*, 158 Ohio St. 465, 110 N.E.2d 419, 422 (1953) ("[W]here there intervenes between an agency creating a hazard and an injury resulting from such hazard another .... responsible agency which could or should have eliminated the hazard, the original agency is relieved from liability."). Tolton committed suicide more than one month after his last visit to St. Vincent's. During that one-month period, plaintiff received treatment from University Hospitals of Cleveland and Orca House. In *Workman v. Cleveland Psychiatric Institute*, 61 Ohio Misc.2d 190, 577 N.E.2d 131 (Ct. Cl. 1987), a plaintiff brought an action against a hospital for failing to admit her mentally ill husband, who died four days later in a shoot-out with the police. The Ohio Court of Claims held that the plaintiff's failure to attempt to take her husband to a mental health clinic and her failure to remove guns and bullets from the home constituted "superseding causes intervening to contribute to the decedent's death." *Id.* 577 N.E.2d at 134. The Court held that the hospital "as a matter of law, is not responsible for the actions of an applicant who is denied admission for treatment when such acts took place four days following the date of his alleged application." *Id. See also Tryon v. Ohio Department of Health*, 62 Ohio Misc.2d 150, 593 N.E.2d 516, 518 (Ct. Cl. 1990).

## V. Other State Claims

For the same reasons that plaintiffs are unable to prove proximate cause for their EMTALA claim, plaintiffs are unable to prove proximate cause with respect to their state claims of wrongful death and medical malpractice against St. Vincent's and the hospital's doctors and nurses. Summary judgment, therefore, is appropriate on plaintiffs' state law claims.

## VI. Conclusion

Accordingly, the District Court's judgment is **AFFIRMED**.