**Ronald J. TURNER, as Administrator of the Estate of Charlotte M. TURNER, and Individually, Plaintiff,**

**v.**

**FALLON COMMUNITY HEALTH PLAN INC., Defendant.**

**Civil Action No. 95–40225–NMG.**

United States District Court, D. Massachusetts.

Feb. 5, 1997.

**420**

Barry A. Bachrach, Thomas J. Scannell, Worcester, MA, Burton Chandler, Worcester, MA, for plaintiff.

Thomas I. Elkind, Boston, MA, Daly D.E. Temchine, Washington, DC, for defendant.

## MEMORANDUM AND ORDER

GORTON, District Judge.

The above-entitled action was filed on December 11, 1995 by the plaintiff, Ronald J. Turner ("Turner"), against the defendant, Fallon Community Health Plan, Inc. ("Fallon"), alleging *inter alia*, that Fallon's denial of Turner's rights and benefits due under Fallon's health care policy was arbitrary and capricious in violation of ERISA, 29 U.S.C. § 1001 *et seq.* Plaintiff invokes this Court's jurisdiction pursuant to 28 U.S.C. § 1331.

Pending before this Court are the following six motions:

1) defendant's motion for leave to file opposition to plaintiff's motion to amend his Complaint to add state law claims in excess of twenty pages filed July 12, 1996;

2) defendant's motion for leave of court to file memorandum of points and authorities in support of its motion for summary judgment in excess of twenty pages filed March 25, 1996;

3) defendant's motion to strike the plaintiff's demand for a jury trial filed March 25, 1996;

4) plaintiff's motion for reconsideration of this Court's memorandum and order dated May 10, 1996 filed June 12, 1996;

5) plaintiff's motion to amend complaint to add state law claims filed June 12, 1996; and

6) defendant's motion for summary judgment filed March 25, 1996.

## I. FACTUAL BACKGROUND

Turner, an employee of General Motors Corporation ("GM"), was appointed Administrator of the Estate of his wife, Charlotte Turner. Before she died, Mrs. Turner was entitled to receive covered health care benefits from Fallon through Turner's employment with GM.

Mrs. Turner was diagnosed with breast cancer in 1991, and in May, 1993, tests revealed that her disease had metastasized. Dr. Ronald Hochman, Mrs. Turner's oncologist, determined that she required an autologous bone marrow transplant ("ABMT"), and recommended that she enroll in the bone marrow transplant program operated by the Dana Farber Cancer Institute ("Dana Farber").[1] In June, 1993, Dana Farber deter-

---

1. ABMT (also referred to as AuBMT) involves the extraction or "harvesting" of white blood cells from a patient's bone marrow. White blood cells, which are vital to the operation of the body's immune system, are removed in order to enable the patient to undergo high dose chemotherapy ("HDC") treatment which, ideally, destroys the cancer cells but also has the undesirable effect of destroying the white blood cells that remain in the body. After HDC, the patient's white blood cells are destroyed and the patient effectively has no immunity to disease.

mined that Mrs. Turner's cancer had spread to her bone marrow, and that as a result, she did not meet the requirements for eligibility in the their program.

The Dana Farber physicians and Dr. Hochman then recommended that Mrs. Turner enroll in the bone marrow transplant program operated by the Duke University Medical Center ("Duke"). On July 19, 1993, Duke, after analyzing the results of medical tests, determined that Mrs. Turner met the requirements for eligibility in the Duke program.

Before August 23, 1993, the Fallon Handbook, upon which Fallon bases its medical coverage decisions, provided coverage for ABMT procedures, but only for treatment of "acute leukemia in remission, resistant non-Hodgkin's disease, recurrent or refractory neuroblastoma, or advanced Hodgkin's disease." The Handbook specifically excluded coverage for "... [s]ervices for any transplant or condition not listed above. This includes, but is not limited to bone marrow transplant for treatment of solid tumors or pancreas transplant."

In response to requests from Mrs. Turner and another patient of Dr. Hochman for coverage of ABMT procedures for solid tumor cancer, Fallon's Transplant Committee met on August 23, 1993, to review the respective protocols of the Dana Farber and Duke programs for the application of ABMT to solid tumor carcinoma. The Transplant Committee heard the medical opinions of Dr. Hochman and a Fallon surgical oncologist identified only as "Dr. Orr." The Transplant Committee also reviewed the then current literature on the use of ABMT in connection with solid cancer tumors.

Based upon the Transplant Committee's recommendation, Fallon extended coverage for ABMT to solid cancer tumors, but only in cases where 1) Dana Farber physicians determine that the patient meets Dana Farber's protocol criteria, and 2) the Fallon Transplant Committee determines that the patient has a critical need for the Dana Farber transplantation procedure and there is a strong likelihood of a successful clinical out-come for the particular patient. Mrs. Turner did not qualify for coverage under the amended Fallon Plan because she did not meet Dana Farber's protocol. Fallon ultimately denied her request for coverage for ABMT procedures to be performed by Duke and, after her final appeal for coverage under the Duke program was denied by Fallon, Mrs. Turner, on October 5, 1993, began chemotherapy treatment. Mrs. Turner died on August 17, 1994.

## II. PROCEDURAL HISTORY

Plaintiff filed a complaint in the Superior Court of Massachusetts, Worcester Division, on December 6, 1995, asserting claims of breach of contract, breach of implied covenant of good faith and fair dealing, wrongful death, loss of consortium, and negligent and/or intentional infliction of emotional distress. The case was removed to this Court on December 11, 1995, whereafter plaintiff amended his complaint to state a single claim of ERISA violation. On March 29, 1996, the plaintiff filed a motion for a continuance or other relief pursuant to Fed.R.Civ.P. 56(f) which this Court denied on May 10, 1995. Pending before this Court are the above referenced six motions all of which are ripe for disposition.

## III. DISCUSSION AND ANALYSIS

### A. Defendant's Motions for Leave to File Memoranda in Excess of 20 Pages.

Defendant's motion for leave to file opposition to plaintiff's motion to amend his complaint to add state law claims in excess of twenty pages and defendant's motion for leave of court to file memorandum of points and authorities in support of defendant's motion for summary judgment in excess of twenty pages set forth reasons why Fallon should be granted leave to file extended briefs. Defendant states that the highly technical subject matter, i.e. medical treatment and explanations of the processes involved, necessitate the submission of briefs in excess of twenty pages. This Court accepts

The previously harvested white blood cells then are transfused into the patient. Optimally, the white blood cells will multiply and revive the patient's immune system.

the explanation and will therefore, allow both motions.

### B. Defendant's Motion to Strike the Plaintiff's Demand for a Jury Trial

■ This is an action brought pursuant to 29 U.S.C. § 1132 to determine whether Fallon properly denied Mrs. Turner's claim for benefit coverage under an ERISA plan.[2] To determine whether a jury trial is available under a particular statute, courts must first look at the statute itself and then to its legislative history. *Charlton Memorial Hosp. v. The Foxboro Co.*, 818 F.Supp. 456, 459 (D.Mass.1993). ERISA does not explicitly state or provide that a person with the standing to assert an ERISA claim has a right to a jury trial with respect to that claim. *Fuller v. Connecticut Life Ins. Co.*, 733 F.Supp. 462, 463 (D.Mass.1990).

Although the issue has not yet been addressed by the First Circuit Court of Appeals, this United States District Court has consistently held that there is no right to a jury trial under ERISA. *Vartanian v. Monsanto Co.*, 880 F.Supp. 63 (D.Mass.1995); *Jorstad v. Connecticut General Life Ins. Co.*, 844 F.Supp. 46 (D.Mass.1994); *Charlton Memorial Hosp.*, 818 F.Supp. at 460; *Fuller*, 733 F.Supp. at 465. A majority of Circuit Courts has likewise held that no right to a trial by jury exists with respect to a claim for benefits based upon ERISA. *Borst v. Chevron Corp.*, 36 F.3d 1308 (5th Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 1699, 131 L.Ed.2d 561 (1995); *Houghton v. SIPCO, Inc.*, 38 F.3d 953 (8th Cir.1994); *Blake v. Unionmutual Stock Life Ins. Co. of America*, 906 F.2d 1525 (11th Cir.1990); *Turner v. CF & I Steel Corp.*, 770 F.2d 43, 47 (3d Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); *Wardle v. Central States, S.E. and S.W. Areas Pension Fund*, 627 F.2d 820 (7th Cir.1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981). While sheer weight of opinion is not in itself sufficient reason for this Court to rule in a particular way, "it is often indicative that the road less traveled may be a dead end." *Fuller*, 733 F.Supp. at 463.

Most courts that have analyzed the legislative history of ERISA have concluded that a jury trial is not available under the statute. Those courts construe Congress' failure to provide such a right as conclusive evidence of an intent not to alter the common law of trusts under which no jury trial is available. *Wardle*, 627 F.2d at 830; *Fuller*, 733 F.Supp. at 463. The Supreme Court of the United States has found that:

> ERISA abounds with the language and terminology of trust law.... ERISA's legislative history confirms that the Act's fiduciary responsibility provisions ... 'codif[y] and mak[e] applicable to [ERISA] fiduciaries certain principles developed in the evolution of the law of trusts.'

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) (determining the appropriate standard of review in ERISA actions and quoting H.R.Rep. No. 93–533, p. 11 (1973)). In *Firestone*, the Court therefore, held that decisions under ERISA are to be "guided by principles of trust law." *Id.*

The Seventh Circuit Court of Appeals, after examination of ERISA's legislative history, specifically rejected the argument that the structure of ERISA evidences a congressional intent to provide for a jury trial. *Wardle*, 627 F.2d at 820. In *Wardle*, the

---

**2.** The civil enforcement provisions of ERISA are found in Section 502 of the Act, codified at 29 U.S.C. § 1132. The pertinent provisions read:
   a) Persons empowered to bring civil action. A civil action may be brought ...
     1) by a participant or beneficiary ...
     B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

     3) by a participant, beneficiary, or fiduciary

   A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or
   B) to obtain other appropriate; equitable relief
   i) to redress such violations or
   ii) to enforce any provisions of this subchapter or the terms of the plan.

plaintiff argued that because 29 U.S.C. § 1132(a)(3) *specifically* authorizes participants *to* bring suit to enforce equitable *rights*, § 1132(a)(1)(B) must contemplate suits to enforce legal rights, which would entitle them to a jury trial. Otherwise, it was argued, that section would be superfluous. *Fuller,* 733 F.Supp. at 463 (citing *Wardle,* 627 F.2d at 828–29). The court in *Wardle* rejected the argument, however, reasoning that even if every claim brought under § 1132(a)(1)(B) were equitable in nature, that section would not be superfluous because Congress granted to state courts concurrent jurisdiction over suits brought under that section but not under § 1132(a)(3). *Wardle,* 627 F.2d at 829.

Because ERISA does not provide for a trial by jury and the majority of courts, within and without the First Circuit, have found no congressional intent to provide such a right, this Court concludes that the plaintiff is not entitled to a jury trial in this case.

### C. *Plaintiff's Motions for Reconsideration of This Court's Earlier Memorandum and Order and to Amend Complaint to Add State Law Claims*

In response to defendant's motion for summary judgment, the plaintiff filed a motion under Fed.R.Civ.P. 56(f) for a continuance so that he could conduct the necessary discovery to oppose defendant's motion. By a Memorandum and Order dated May 10, 1996, ("the Order"), this Court denied that motion. In doing so, it observed that plaintiff's attempts to defeat the motion would be futile because "ERISA preempts any claim plaintiff could raise against Fallon, and that Mrs. Turner's death has effectively eliminated any chance of recovery under that statute."

Turner now files this motion for reconsideration of the issue of preemption addressed by this Court in the Order. Consistent with this motion, Turner also has filed a motion to amend his complaint to reassert his state law claims. The crux of his argument in the latter motion is that this Court was incorrect in its conclusion of May 10, 1996 that "ERISA preempts any claim plaintiff could raise against Fallon, and that Mrs. Turner's death has effectively eliminated any chance

of recovery under that statute." Plaintiff argues that Congress did not intend that ERISA would preempt state law claims where ERISA provides no remedy. In addition, he argues, ERISA does not preempt plaintiff's claims where, as here, the claim sounds in malpractice by the HMO rather than challenging a plan administration decision. Finally, Turner argues that this Court should fashion federal common law where, as here, ERISA does not provide an express remedy.

■ ERISA was enacted to provide a uniform set of federal regulations for dealing with employee benefit plans, the regulation of which had previously been the province of various state laws. *See FMC Corp. v. Holliday,* 498 U.S. 52, 56–60, 111 S.Ct. 403, 406–09, 112 L.Ed.2d 356 (1990). "The pre-emption clause [of ERISA] is conspicuous for its breadth." *Id.,* at 58, 111 S.Ct. at 407. ERISA preempts all state laws that "relate to" employee benefit plans, whether or not the state laws are designed to affect employee benefit plans. *Id.*

In recent years, an increasing amount of state law actions have been brought against utilization review providers for the denial of claims for benefits. The majority rule that has developed is that such claims are preempted by ERISA, even where ERISA provides plaintiffs with no alternative remedy. Although the First Circuit Court of Appeals has yet to address this issue directly, in *Tolton v. American Biodyne, Inc.,* 48 F.3d 937 (6th Cir.1995), the Sixth Circuit specifically dealt with the question of whether ERISA preempted state law claims against a utilization review provider for wrongful death, improper refusal to authorize benefits, medical malpractice and insurance bad faith.

The plaintiff in *Tolton* was the administrator of the estate of Henry Tolton. Mr. Tolton had committed suicide and the plaintiff brought various state law claims against defendants alleging that the suicide resulted from defendant's refusal to authorize certain inpatient benefits under the employee benefits plan which covered Tolton. The defendants removed the case to federal district

court on grounds of ERISA preemption, and then moved for summary judgment on the same grounds. The district court granted the defendant's motion for summary judgment and the plaintiff appealed.

Reviewing the decision of the district court *de novo*, the Sixth Circuit affirmed, holding that because plaintiff's claims arose from the defendant's refusal to authorize psychiatric benefits to Tolton under the plan, and because there was no dispute that the health plan was covered by ERISA, the claims "clearly 'relat[ed] to' the benefit plan" and were therefore, preempted. *Id.*, at 942. The fact that Tolton was refused benefits pursuant to utilization review made no difference to the court, which explained that similar challenges to utilization review were found to be preempted in other circuits. *Id.* (relying on *Corcoran v. United HealthCare, Inc.*, 965 F.2d 1321 (5th Cir.) (ERISA preempted wrongful death claim against utilization review provider for refusal to authorize hospitalization for plaintiff who then lost her fetus), *cert. denied*, 506 U.S. 1033, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992), and also citing *Kuhl v. Lincoln Nat'l Health Plan*, 999 F.2d 298 (8th Cir.1993) (ERISA preempted wrongful death claim based upon delayed pre-authorization for surgery), *cert. denied*, 510 U.S. 1045, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994), and *Spain v. Aetna Life Ins. Co.*, 11 F.3d 129, 131 (9th Cir.1993) (ERISA preempted wrongful death claim based on withdrawal of authorization for surgery) *cert. denied*, 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 340 (1994)).

In its *Tolton* decision, the Sixth Circuit went on to cite additional reasons for its holding which are also informative with respect to the case at bar and plaintiff's arguments outlined above. The court rejected the plaintiff's argument, which is also made by the plaintiff here, that ERISA does not preempt its state law claims because ERISA provides no adequate alternative remedy. *Id.* at 943 (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54, 107 S.Ct. 1549, 1556–57, 95 L.Ed.2d 39 (1987)) An unfortunate consequence of ERISA preemption is, therefore, that plan beneficiaries or participants who bring certain kinds of state actions, e.g.

wrongful death, may be left without a meaningful remedy. *Tolton*, 48 F.3d at 943; *Corcoran*, 965 F.2d at 1338 ("The result ERISA compels us to reach means that the [plaintiffs] have no remedy, state or federal, for what may have been a serious mistake."); *Settles v. Golden Rule Ins. Co.*, 927 F.2d 505 (10th Cir.1991) (no remedy for wrongful death action against ERISA health plan.); *Kuhl*, 999 F.2d at 298 (no remedy for plaintiff alleging husband's death resulted in delayed preauthorization for surgery.)

■ Sadly, the case at bar compels a like result. Plaintiff's state common law claims are preempted by the broadly sweeping arm of ERISA. Plaintiff is left without any meaningful remedy even if he were to establish that Fallon wrongfully refused to provide the Duke protocol treatment his wife urgently sought. Notwithstanding the merits of plaintiff's argument, this Court cannot legislate by judicial decree nor apply a statute, such as ERISA, other than as drafted by Congress.

The first step in this Court's analysis of plaintiff's claims is, therefore, to determine if the state laws under which he brings his claims against Fallon "relate to" GM's employee benefit plan. Plaintiff's state law claims as set forth in the proposed Second Amended Complaint include breach of contract, breach of implied covenant of good faith and fair dealing, wrongful death, loss of consortium and negligent and/or intentional infliction of emotional distress. Those claims all arise from Fallon's refusal to authorize the Duke protocol treatment for Mrs. Turner under the plan that GM had contracted with Fallon to provide for its employees. It is clear, therefore, that plaintiff's claims "relate to" the benefit plan. *Pilot Life*, 481 U.S. at 48, 107 S.Ct. at 1553; *Tolton*, 48 F.3d at 942.

### D. *Defendant's Motion for Summary Judgment*

■ Because plaintiff's state common law claims outlined above are preempted by ERISA, he is left with only his claim under ERISA. When pursuing a civil ERISA action, a claim may only be brought

by a participant or beneficiary ... to recover benefits due to him under the terms

of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). Here plaintiff is not seeking to recover benefits due to his wife under the terms of the Fallon Community Health Plan which he was provided by his employer. Furthermore, any kind of injunctive relief to enforce Mrs. Turner's rights under the plan is no longer viable due to her unfortunate death.

■ The heart of plaintiff's ERISA claim is that Fallon's decision to deny Mrs. Turner coverage for treatment under the Duke protocol was arbitrary and capricious. This Court need not and will not, however, address the merits of that claim. The clear mandate of ERISA compels this Court to the unavoidable conclusion that plaintiff does not seek to recover benefits due to Mrs. Turner nor to clarify his rights to future benefits under the terms of his plan. Moreover, any rights Mrs. Turner may have once possessed under the plan are no longer viable. Finally, it is settled law that a claim for damages cannot fall under the purview of "other equitable relief" available to a successful ERISA litigant under § 502(a)(3)(B)(i) thereof. *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161. (1993) Plaintiff does not have a justiciable claim against Fallon under ERISA and therefore summary judgment will, appropriately, be entered for defendant.

Whether plaintiff has other claims against other parties, as suggested in defendant's opposition brief (which plaintiff may well have) is not an issue before this Court in these proceedings.

It is noted that utilization review mechanisms and procedures such as the HMO at issue in this case did not exist when Congress enacted ERISA in 1974. While the result in this case is consistent with the manifest intent of Congress neither to allow state law claims that "relate to" employee welfare benefit plans nor to afford a remedy under ERISA to beneficiaries in analogous situations to that of Mrs. Turner, the landscape of employee benefit plans has shifted dramatically in the past 23 years. The prev-

alent system of utilization review now in effect in most health care programs may warrant a reevaluation of ERISA by Congress so that its central purpose of protecting employees may be reconfirmed.

### ORDER

For the foregoing reasons,

1) defendant's motion for leave to file opposition to plaintiff's motion to amend his complaint to add state law claims in excess of twenty pages, filed July 12, 1996, is **ALLOWED,**

2) defendant's motion leave of court to file memorandum of points and authorities in support of defendant's motion for summary judgment in excess of twenty pages, filed March 25, 1996, is **ALLOWED,**

3) defendant's motion to strike the plaintiff's demand for a jury trial, filed March 25, 1996, is **ALLOWED,**

4) plaintiff's motion for reconsideration of this Court's memorandum and order dated May 10, 1996, filed June 12, 1996, is **DENIED,**

5) plaintiff's motion to amend complaint to add state law claims, filed June 12, 1996, is **DENIED,** and

6) defendant's motion for summary judgment, filed March 25, 1996 is **ALLOWED.**

So ordered.