**ASSOCIATES INSURANCE COMPANY, Plaintiff,**

v.

**William W. WHITTINGTON, Defendant.**

**No. 1:00 CV 1083.**

United States District Court, N.D. Ohio, Eastern Division.

May 2, 2001.

Eric Larson Zalud, Mariann E. Butch, Benesch, Friedlander, Coplan & Aronoff, Cleveland, OH, for Associates Ins. Co.

James M. Lemieux, Jefferson, OH, for William J. Whittington.

## MEMORANDUM OPINION AND ORDER

NUGENT, District Judge.

This matter is before the Court pursuant to the Motion of Defendant to Reconsider Motion for Summary Judgment. (ECF # 26). For the reasons stated below, the motion is denied.

### Procedural and Factual Background

Plaintiff Associates Insurance Company ("Associates") filed this action seeking a declaratory judgment that Defendant William Whittington has uninsured/underinsured ("UM/UIM") motorists coverage under the Commercial Lines Policy, No. TK1003612–98 (the "Policy") issued to him by Associates in the amount of $25,000. Defendant filed a counterclaim asserting that he has insurance coverage in the amount of $750,000, and since he did not sign any documentation reducing the coverage for UM/UIM coverage, he is entitled to such coverage in the amount of the $750,000 policy limits.

Defendant, an independent truck driver was injured in a vehicular accident on September 18, 1999. The other driver was at fault. Apparently that driver's insurance was limited to $12,500 per accident. Defendant settled with that driver while retaining the right to seek coverage from Associates under the UM/UIM clause of the Policy. Defendant demanded $425,000 from Associates for liabilities not paid or not encompassed by the statutory minimum limits of the other driver's policy. Associates refused to pay any more than the $25,000 statutory minimum UI/UIM coverage that it says is contained in the Policy.

A copy of the Policy is attached to the Complaint. The declarations page of the Policy indicates $25,000 UI/UIM coverage at a premium cost of $18.00. The Policy also contains a page entitled "OFFER OF UNINSURED/UNDERINSURED MOTORISTS LIABILITY AND PROPERTY DAMAGE COVERAGE AND SELECTION OF LIMITS OR REJECTION OF COVERAGE". The page explains UI/UIM coverage and provides three choices for the insured: 1) UI/UIM coverage at the same limits as the coverage of the policy; 2) coverage at the statutory minimum limit of $25,000; or 3) rejection of any UI/UIM coverage. The choice of the statutory minimum of $25,000 is marked on Defendant's Policy. The page includes a signature line for the insured to sign. This page of Defendant's Policy is not signed.

In his affidavit submitted with his original motion for summary judgment, Defendant states that he entered into a contract for insurance with Plaintiff for $750,000 worth of liability insurance coverage as well as other pertinent coverages and that

he never requested or agreed to any reduction in coverage, including but not limited to UI/UIM coverage. Defendant further states that he has a seventh grade education and relied on the "acumen of the insurance agent for Associates in providing me with the proper coverage, including but not limited to the uninsured/underinsured motorist provisions." (Pl. Aff. at ¶ 4).

In response Associates submitted the affidavit of its independent insurance agent Wanda Zavatsky who worked with Defendant to obtain his policy. Ms. Zavatsky faxed an application to Defendant which he filled out and faxed back to her. Ms. Zavatsky stated that Defendant was very price conscious and selected a $750,000 liability coverage when most truck drivers select $1,000,000 coverage. Defendant also left blank the section dealing with UI/UIM coverage indicating to Ms. Zavatsky that he did not want it. Ms. Zavatsky discussed UI/UIM coverage with Defendant, including the amount of coverage and the premiums associated with it. After their discussion, Defendant agreed to UM/UIM coverage at the statutory minimum limits of $25,000. Attached to Ms. Zavatsky's affidavit is the application which indicates that $25,000 UI/UIM coverage was sought.

Defendant's first motion for summary judgment was denied as there was a factual dispute concerning the amount of coverage sought and agreed to by Defendant. Defendant now moves for reconsideration of the Court's denial of his summary judgment motion based upon a recent decision of the Ohio Supreme Court. *See Linko v. Indemn. Ins. Co.,* 90 Ohio St.3d 445, 739 N.E.2d 338 (2000). Plaintiff has filed a brief in opposition to Defendant's Motion for Reconsideration.

### Summary Judgment Standard

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Rodio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348; 89 L.Ed.2d 538 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995) (citing *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the

court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. 2505. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir.1995). Federal Rule of Civil Procedure 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

FED. R. CIV. P. 56(e). The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that " 'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.' " *Wiley v. United States*, 20 F.3d 222, 225–26 (6th Cir.1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988)). Federal Rule of Civil Procedure 56(e) also has certain, more specific requirements:

> [Rule 56(e) ] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225–26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect. If the opposing party:

> fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249, 106 S.Ct. 2505. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless

"there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

### Discussion

Defendant asserts that *Linko* provides that in situations where the insured argues that there has been no reduction in coverage and there is no written documentation confirming the intent of the insured to reduce coverage, then there is no reduction. Further, the Court may only look to the four corners of the contract to determine if any reduction was agreed to and not any extraneous evidence such as conversations with the insurance agent.

In *Linko,* the Ohio Supreme Court answered questions of state law certified from the United States District Court for the Western District of New York. The case arose from a car accident in which Michael Linko was killed. The tortfeasor's insurance company tendered its policy limits of $100,000 to be divided between the beneficiaries of Mr. Linko and the two other people killed in the accident. Mr. Linko's executor brought action seeking a declaration that she was entitled to underinsured motorist ("UIM") coverage under a business auto policy issued by the respondent Indemnity Insurance Company of North America ("Indemnity") that included Mr. Linko as an insured. The parties agreed that Mr. Linko was driving a company-owned car in the course of his employment with Saint–Gobain Industrial Ceramics, Inc. ("SGIC") and that Linko was an insured under the policy. Indem-

nity denied coverage because it argued that the UIM coverage had been rejected on behalf of SGIC by a related corporate entity.

The policy was issued to SGIC's parent corporation and certain subsidiaries, all of which were named insureds. SGIC was not a named insured but Indemnity never disputed that SGIC and Linko qualified as additional insureds. A form used to reject UM/UIM coverage under Ohio law lists the named insured as "Norton Company", which was one of several named insureds, and was signed on behalf of the Norton Company by an employee of the parent company. Linko's executor claimed that the rejection form did not properly reject UM/UIM coverage for Linko. In response to the questions certified to it the Ohio Supreme Court held: 1) yes, an insured may challenge the authority of a signatory to an UI/UIM rejection form; 2) no, the UI/UIM rejection form did not meet the offer requirements of R.C. 3937.18. A written offer must contain a brief description of the coverage, the premium for that coverage and an express statement of the UM/UIM coverage limits. Since the form did not contain the required information, the offer would not allow an insured to make an express, knowing rejection of the coverage; 3a) yes, each of several separately incorporated named insureds must be expressly listed in the rejection form in order to satisfy the requirement that the waiver be make knowingly, expressly, and in writing by each named insured; 3b) The four corners of the insurance agreement control in determining whether the waiver was knowingly and expressly made by each of the named insureds. Extrinsic evidence is not admissible to prove that a waiver was knowingly and expressly made by each of the named insureds; 3c) not answered in light of answer to 3b; and 3d) no, a parent corporation does not have

implied authority to waive coverage on behalf of its separately incorporated subsidiaries when the subsidiaries did not provide written authorization to waive UI/UIM coverage on its behalf prior to commencement of the policy.

Because there are some distinct factual dissimilarities between this case and *Linko, Linko* does not control the outcome in this instance. The issue in *Linko* revolved around who may reject UI/UIM coverage for whom and what form is sufficient to allow rejection. Thus, the fundamental issue was whether there was UI/UIM coverage at all, not how much coverage there was. In the case at bar, both parties agree that UI/UIM coverage exists, the question is how much. The form at issue, which fulfills the requirements of R.C. 3937.18, provides boxes for three choices: UI/UIM coverage at the same limits as the policy; UI/UIM coverage at the statutory minimum level of $25,000; and complete rejection of UI/UIM coverage. The second option of the statutory minimum level of coverage is marked but the form is not signed by Defendant. Thus, Defendant asserts that his failure to sign the form automatically entitles him to the first option, UI/UIM coverage at the policy limits. However, the declarations page of the policy clearly provides that Defendant chose and was billed for UI/UIM coverage of $25,000 as does Defendant's application for insurance. While the four corners of the document may control the question of whether there is UI/UIM coverage, it does not in this instance control the question of how much coverage exists. The answer to that question involves the course of negotiations between the parties, the application and the policy. Accordingly, genuine issues of material fact remain which preclude summary judgment.

### Conclusion

For the reasons set forth above, Defendant's Motion to Reconsider Motion for Summary Judgment (ECF # 26) is DENIED.

IT IS SO ORDERED.