USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-2265 CHERYL T. RECUPERO, Plaintiff - Appellant, v. NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY, ET AL., Defendants - Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Robert B. Collings, U.S. Magistrate Judge] ____________________ Before Bownes and Cyr, Senior Circuit Judges, and Keeton,* District Judge. _____________________ Lynn Thomas Johnson, with whom Blaine J. DeFreitas and Saab Law Firm were on brief for appellant. Lisa  M.  Birkdale,  New  England Telephone and Telegraph Company, for appellees. ____________________ July 7, 1997 ____________________ * Of the District of Massachusetts, sitting by designation. KEETON, District Judge. This appeal presents issues regarding the scope of jurisdiction of federal courts over claims for benefits under an employee benefits plan that is subject to regulation under the Employee Retirement Income Security Act (ERISA). In particular, we must decide what standards apply to judicial  review  of  the  decisions of the out-of-court decisionmakers in this case. Without  doubt, in the circumstances of this case, as the parties agree, the district court had jurisdiction for judicial review of the out-of-court decisions, under 29 U.S.C. SS 1132(a)(1)(B) and 1132(c), for at least one purpose: to determine  whether those decisions should be set aside as arbitrary and capricious. In turn, this court has jurisdiction, under 28 U.S.C. SS 636(c)(3) and 1291, to consider plaintiff-appellant's appeal from the district court's judgment for defendants. In cases involving this kind of judicial review, ordinarily the appropriate judgment for a district court to order is  one  or  the  other  of  two kinds. If the district court determines that  the  out-of-court decisions were arbitrary and capricious, the appropriate form of order is one remanding to the out-of-court decisionmaker for further proceedings to decide whether the claim or claims have merit. Otherwise, the usual form of order is a final judgment affirming the decisions of the out-of-court decisionmaker.   In  this  case, however, appellees assert that "[t]he only  salient  issue  before the court is whether the determination of the  Committee to deny Recupero accident benefits was arbitrary and -2- capricious." (Appellee's Br. at 2.) Though acknowledging as a general matter the possibility of a remand "to the Committee for further consideration" (id.), in the end appellees request only a recognition that "the Committee's reasonable decision must be permitted  to  stand" and an order that the district court's summary judgment for defendant "be affirmed." (Id. at 22.) Appellant, also,  seeks  a final decision in this court. Thus, no party to the appeal asks for remand to the out-of-court decisionmaker (or even to the district court on conclusion of this appeal), except possibly as an alternative request, not clearly argued in the briefs and barely mentioned in oral argument apart from responses to questions from the court. Instead, the parties join in contending that, if we conclude that the out-of-court decisions were for some reason arbitrary and capricious, then we should (1)  decide  this  controversy finally, or order the district court to do so, making any factual findings necessary to a decision on the merits,  or  (2)  decide  that the claim is finally resolved on grounds of some procedural bar, estoppel, or harmless error. In these circumstances, this appeal presents a fundamental question about the scope of jurisdiction of the district court and this court. After stating relevant background matter in Part I, we address this fundamental jurisdictional question  in  Part  II,  concluding that the courts do not have plenary jurisdiction to decide all questions bearing on the merits. In Part III we turn to other issues, over which we do have jurisdiction, and conclude that the judgment of the district court -3- against plaintiff-appellant is to be affirmed, though without approval of all details of the district court's reasoning. I. Background The incident that forms the basis for this civil action and  this  appeal occurred on January 18, 1990, while the plaintiff- appellant, Cheryl Recupero, was working for New England Telephone and Telegraph Company ("NET") as a Service Representative. The District Court recited, as an undisputed fact, that: At 9:30 am on January 18, she left her workstation on the sixth floor for the purpose of going for coffee at a shop on the  ground  floor. She entered an elevator and was injured in a mishap while in the elevator. (Recupero v. New England Telephone & Telegraph Co., Civil Action No. 94-12266-MLW, Memorandum and Order, Sept. 20, 1996 at 2.) As a result of injuries sustained in this incident, Recupero applied for benefits under the NET plan. (Id.) She was granted  benefits under the Sickness provision of the plan, but was denied Accident benefits. (Id. at 3-4.) The NET plan provides that an employee is: [Q]ualified to receive [Accident Disability] payments on account of physical disability to work by reason of accidental  injury ...arising out of and in the course of employment by the Company.   (Id. at 3)(emphasis added). The plan further elaborates that: -4- Accidental  injuries shall be considered as arising out of and in the course of employment only where the injury has resulted solely from accident during and in direct connection with the performance of duties to which the employee is assigned... (Id.)(emphasis added). The only limitation on the duration of payment of Accident Disability Benefits, under the terms of the plan,  is  that  the  employee remains unable to work. (Id. at 4 n.2.) The  plan  does  not  explicitly define what "sickness" is in the section providing for Sickness Disability Benefits, but does state that "sickness shall include injury other than accidental injury arising out of and in the course of employment by the Company." (Id. at 4)(emphasis added). Sickness Disability Benefits are subject to a duration limit of 52 weeks, under the terms  of  the  plan.  (Id.  at 4, n.2.) NET paid and Recupero accepted 52 weeks of Sickness Disability Benefits. (Id. at 3.) The Benefits Office determined that Recupero was not entitled to Accident Disability Benefits because her injuries did not arise out of or occur in the course of her employment. (Id.) Recupero  appealed this decision to the Employee Benefits Committee ("EBC" or "Committee"), which denied her appeal by letter on December 15, 1993, stating that "it was determined that there is evidence that you were not eligible for Accident Benefits for the incident report on January 18, 1990." (Id.) Recupero then filed an identical appeal with the Employee Benefits Claim Review Committee ("EBRC" or "Review Committee"), which also denied her appeal, stating that "after consideration of all available -5- information,  including  the information you provided, the [EBRC] has determined  that  there  is  no reason to reverse the original decision of the [EBC]." (Id. at 5.)  Recupero  filed a civil action for judicial review in the United States District Court for the District of Massachusetts. The  district  court assigned the case to Magistrate Judge Collings, under 28 U.S.C. S 636(c)(1) and Local Rules of the district.  In  the  district court, Recupero contended that: (1) the EBC  and  the  EBRC acted arbitrarily and capriciously by erroneously interpreting  the  provisions of the plan; (2) the Committees' denial of her claim lacked good faith; and (3) the Committees gave her inadequate notice of the denial. (Id. at 9.)  The district court decided the case by ruling on cross motions for summary judgment. The court initially noted the appropriate standard of review,  stating that the arbitrary and capricious standard applies where the benefit plan vests the fiduciary with the discretionary authority to determine benefits eligibility and to construe plan provisions. (Id.) The court then made the following determination: [T]he NET plan enumerates in sufficient detail the broad discretionary powers of both the EBC and the EBCRC necessary for application  of the deferential standard of review. Thus, the rulings of the NET committees will not be disturbed unless the  denials  were arbitrary and capricious. (Id. at 8.) -6- The district court next examined in detail the various claims and contentions. Recupero, using the word "Committee" to refer to either or both of the Benefits Committee and the Review Committee, stated as her first argument that the Committee improperly  categorized  her injury as "off-duty" when it should have been treated as an "on-duty" injury. (Id. at 9.) This argument concluded  with  the  assertion that it was not "rational" to classify incidents that occur during breaks, taken at a time required or directed by the employer, as being "off-duty" incidents. (Id.)  The district court concluded (contrary to Recupero's contention) that the EBC and EBRC had not been arbitrary and capricious  in  interpreting the plan as defining break-time as "off- duty" time. The court stated: Recupero  does not point to any language in the plan which indicates that the committee interpretation is not rational. Nor does she point to language which suggests that the scope of the Accident Benefits Provision should be given a broader reading and be applied when the injury occurs as a result of an otherwise non-job-related activity which is marginally motivated by a job-related exigency. On the contrary, and the defendants point out, the plain language of the plan militates for a far narrower reading. (Id. at 10-11.) The  court  below  also  emphasized that the definition of an injury that would qualify an employee for accident benefits had words of limitation, such as "only," "solely," and "in direct connection." (Id. at 11.) These words, the court reasoned, are -7- plain and unambiguous, and require that for an employee "to be eligible  for  accident benefits, the activity in which the employee is engaged at the time of injury must be a duty or responsibility required by her job." (Id.) Thus, the court concluded: It  is  an  undisputed fact that Recupero was taking her break and going to get coffee at the time she sustained her injuries. Breaks fall outside the purview of the plain language of the Accident Benefit Provisions. Therefore, given that Recupero was on break at the time, her injury cannot be said to be a direct and sole result of her job responsibilities. (Id.) Because, as the court below viewed the matter, the plaintiff  had failed to raise an issue of material fact, the court ruled that the Committees' interpretation was consistent with the language of the plan, and that the Committees did not act arbitrarily or capriciously in denying Recupero's claim. (Id. at 12.) Recupero's second contention below was that the Committees  acted with a lack of good faith toward her because, she claimed,  the  EBC and the EBRC either never met to review her claim or  failed  to  have a quorum present when they did meet. (Id.) The court  below  determined that Recupero's claim of lack of good faith was without evidentiary support in the record. (Id. at 13.) The final issue decided by the court below was whether the  notices  of denial sent to Recupero by the Committees conformed with the statutory requirements of ERISA. (Id.) Recupero contended that the failure of the Committees to include specific -8- reasons for denying her claim, or to cite to any specific plan provisions upon which the denial was based, precluded her from obtaining  the information that was necessary for her to pursue her claim. (Id. at 14.) On the issue of notice, the court below concluded that: The  denial  letters sent to Recupero failed to conform strictly to the requirements set forth in ERISA, 29 U.S.C. S 33, and were insufficient as a matter of law. Nonetheless, as a practical matter, the letters were substantially sufficient to inform Recupero that her claim had been denied. (Id.) Having so concluded, the lower court then considered whether any remedy was available to Recupero for NET's failure to conform to the requirements of 29 U.S.C. S 33. (Id.) The court concluded that a remand to the EBC or the EBRC would be a useless formality  because the evidence taken as a whole indicated that the denial of benefits was correct. (Id. at 15.)  On this reasoning, the district court granted summary judgment for NET on all claims. Recupero appealed. No cross appeal was filed. II. The Scope of Jurisdiction in a Case  Involving Judicial Review of Out-of-Court Decisions A. Circumstances of the Present Appeal As  already  noted, the district court had, and this court has, authority for judicial review of the out-of-court decisions that preceded commencement of this civil action in the district -9- court. 29 U.S.C. SS 1132(a)(1)(B) and 1132(c); 28 U.S.C. SS 636(c)(3) and 1291. Also, Recupero does not dispute that the judicial  review is to be "de novo" and that she has the burden, in the circumstances of this case, of showing that the denial of her claim violated the "arbitrary and capricious" standard. (Appellant's Br. at 9, citing Firestone Tire and Rubber, Inc. v. Bruch, 489 U.S. 101, 113 (1989); Pagan v. NYNEX, 52 F.3d 438, 442 (2d Cir. 1995) (judicial review of decision by pension plan administrator to deny long-term disability benefits, where pension provisions gave the plan administrator broad discretion to determine  eligibility issues and no material fact was genuinely in dispute; "we are not free to substitute our judgment for that of the NYNEX Committee as if we were considering the issue of eligibility anew," and as if free to upset a reasonable interpretation; court reviews only the decision of the NYNEX Committee  and,  even  if  plan provisions were drafted by NYNEX, which is an entity different from the NYNEX Committee, and were ambiguous, the rule contra proferentum is inapplicable); Diaz v. Seafarers Union, 13 F.3d 454, 456-57 (1st Cir. 1994) (trustees' decision  denying retired seaman's claim for higher monthly pension benefit  under Seafarers International Union's Pension Plan did not improperly apply the trustee rules about "break in service" that were promulgated pursuant to powers that the Plan instrument granted  to  the  trustees); Stuart v. Metropolitan Life Ins. Co., 664 F. Supp. 619, 622-23 (D. Me. 1987) (declining to overturn recoupment from worker, of sum equal to lump-sum Social Security -10- payments, by insurer under Group Insurance Policy taken out by Plan)). Though  the  contentions of the parties about the scope of the jurisdiction of the district court and this court differ, all parties to this appeal urge us to take an exceedingly expansive view of the scope of the courts' jurisdiction in reviewing ERISA benefit  determinations.   Each party to this appeal, at least in the alternative, urges us to hold that the district court had jurisdiction not only to apply the arbitrary and capricious standard of review to at least some aspects of the out-of-court decisions, but also to make findings on material and genuinely disputed  factual  issues  that allegedly should have been decided and were not. In essence, we are asked to decide on the merits, or direct the district court to decide on the merits, every material factual  issue  as  to  which the out-of-court decisions under judicial review are challenged. We are asked to exercise plenary jurisdiction of the most expansive form. We acknowledge that statements made about "de novo review" in some passages from authoritative sources, standing alone, may seem to support the parties' expansive jurisdictional contentions.   We  conclude, however, that a close examination of the entire array of relevant authority discloses that contentions of the parties in this respect flow from a misreading of Firestone, and a resulting misunderstanding of that case and its sequels. Such a misreading was anticipated by Justice (then Chief Judge) Breyer's  opinion  for  the  First Circuit in Diaz, 13 F.3d at 458. In -11- that case an argument was made that a Plan amendment, granting broad discretion to trustees, showed that the previous provisions of  the  Plan  did not grant discretion that broad. The Diaz opinion responds that the amendment "merely made express a power ... plainly  implied  all  along," perhaps because the trustees "wanted to play it safe in light of Firestone and the possibility that lower courts would later misread it." Id.  The parties' expansive views about jurisdiction derive, at  least  to  some extent, from their reading of what Firestone said about "de novo review." In that case, the Court declared: ...  Consistent with established principles of trust law, we hold that a denial of benefits challenged under S 1132(a)(1)(B) is  to  be  reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. 489 U.S. at 115 (emphasis added). In several significant respects, the case before us in this appeal differs from Firestone. Nevertheless, in this case, one  of  the  questions  we  must address may be stated in a generalized way  in  exactly the same phrase as that used by Justice O'Connor in describing the first of two questions before the Court in that case: "First, we address the appropriate standard of judicial review of benefit determinations by fiduciaries or plan administrators under ERISA." 489 U.S. at 105. The plans involved in Firestone were Firestone's three "pension and welfare benefit plans for its employees: a -12- termination pay plan, a retirement plan, and a stock purchase plan." Id. "All three of the plans were ... governed (albeit in different  ways)  by  ERISA." Id. In our case, also, the NET plan is governed by ERISA, but in some respects by the same ERISA provisions that applied to the Firestone plans and in other respects  by  different  ERISA provisions. One difference is that the Firestone  plans were "welfare and pension plans," and the NET plan is  not.   Other differences emerge as we apply the reasoning of the Court in Firestone to the present case. Firestone determines that: [f]or purposes of actions under S 1132(a)(1)(B), the de novo standard of review applies regardless of whether the plan at issue is funded or unfunded and regardless  of whether the administrator or fiduciary  is  operating under a possible or actual conflict of interest.  489 U.S. at 115. The role of the district court in applying the "de novo standard" is affected, however, by the terms of the particular plan at issue. For example, "if a benefit plan gives discretion  to an administrator or fiduciary who is operating under a  conflict  of  interest  that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.' Restatement (Second) of Trusts S 187, Comment d (1959)." Id. In this case, no party challenges the proposition that NET plan documents did give some discretion, subject to judicial review,  to  the EBC and EBRC. Nor does any party question that the Committees  were acting on behalf of an entity that was, within the meaning of the statutory phrase, an "administrator or fiduciary." -13- Also,  we  do  not  understand the briefs of the parties as challenging the proposition that the Committees had some responsibility, and associated authority, with respect to "constru[ing] the terms of the plan," as that phrase is used in Firestone, 489 U.S. at 115. In any event, if this proposition is challenged, we conclude that the challenge is without merit.  As  previously discussed, when the benefit plan gives the administrator or fiduciary discretion to determine benefit eligibility or construe plan terms, Firestone and its progeny mandate a deferential "arbitrary and capricious" standard of judicial review. Id. Thus, a deferential "arbitrary and capricious" standard of review applies, even though the review is also to be "de novo review" to assure compliance of the out-of- court decisionmakers with standards of conduct analogous to those applied  to  trustees  under judicially developed law (which Firestone adopts to fill the gap left because "ERISA does not set the appropriate standard of review for actions under S 1132(a)(1)(B) challenging benefit eligibility determinations."). 489 U.S. at 109. Because of the combination of similarities and differences between the circumstances in Firestone and the circumstances before us in this case with respect to the array of different plan provisions and with respect to which among ERISA's various  provisions apply, however, we must be especially observant of  the  extent to which the Firestone "de novo standard of judicial review"  requires de novo determinations by the reviewing court and -14- the extent to which, instead, it requires deference to an out-of- court decision that is not "arbitrary and capricious." An example of the kind of problems we must consider is the determination of the meaning of provisions of the NET plan regarding "eligibility for benefits" of various types -- in this case, "Sickness Disability Benefits" and "Accident Disability Benefits." Determining the meaning of such plan provisions ordinarily  depends solely on deciding an issue of law with respect to manifested meaning of relevant provisions of the plan. A reviewing court, at least in the absence of plan provisions explicitly declaring otherwise, has authority to decide that a committee interpretation that varies from an unambiguously manifested meaning is arbitrary and capricious, and must be disregarded.  If, instead, the reviewing court determines that the plan  provisions  are  ambiguous or otherwise unclear, in some respect material  to  the outcome of the case, this determination of lack of clarity  does  not necessarily lead to treating the issue of meaning as one for decision by findings of fact in the district court (either  by  a  jury  or  by  the district judge). Instead, interpretive issues of this kind may be decided by the court as matters of law are decided, or they may be partly decided in court and partly on remand to the out-of-court decisionmakers, or applicable law may require  some  other allocation of decisionmaking functions. We say more  on  this  subject  in  Parts II.B and II.C of this opinion, below. Summarizing, we conclude that in view of the Supreme Court's  pronouncement  in  Firestone, it is no longer in dispute that -15- federal  courts  review  some ERISA claims de novo. Even when de novo review is appropriate, however, it is often subject to some limitations. Thus, the phrase "de novo review," as used in the context of judicial review of out-of-court decisions of ERISA- regulated plan administrators or fiduciaries does not mean that a district  court has "plenary" jurisdiction to decide on the merits, anew, a benefits claim. We  use  the  term  "plenary" to describe jurisdiction of the court  to  disregard completely an "out-of-court decision" the court is reviewing and itself (with or without participation by a jury) decide anew all questions of fact bearing on the merits of the benefits claim.  B. Contrasting Court Roles Because of Limits on Jurisdiction 1. Limits Incident to Fiduciary Discretion Under Terms of a Benefit Plan With respect specifically to an issue regarding eligibility of a claimant for benefits, precedents recognize that district courts do not have expansive plenary jurisdiction to decide the merits of a claim anew if "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Bellino v. Schlumberger Technologies, 944 F.2d 26, 29 (1st Cir. 1991) (quoting Firestone, 489 U.S. at 115); see also Martin v. Bissonette ,  1997  WL  280602, *12 (1st Cir. May 29, 1997) (remarking, in the context of judicial review of state court determinations bearing  upon  habeas  writs, "we find a myriad of situations in which -16- federal courts review others' decisions with a thumb on the scale ....[,] [t]he most conspicuous ... [being] judicial review of agency adjudications"). Thus, if an ERISA out-of-court decisionmaker is given some discretion, the court reviews at least some (if not all) aspects of the out-of-court decision only to determine  whether  that  decision was arbitrary and capricious. This key point expressed in Bellino is entirely consistent with many earlier and later First Circuit decisions that recognize the authority of the court to be less deferential, or not deferential at  all,  of  out-of-court decisions by fiduciaries to whom a benefit plan  did  not  grant discretionary authority to decide the matter at issue. Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173, 181 (1st Cir. 1995) ("In ERISA cases ... court should scrutinize an ostensible waiver with care in order to ensure that it reflects the purposeful relinquishment of an employee's rights."); Hughes v. Boston Mut. Life Ins. Co., 26 F.3d 264, 267 (1st Cir. 1994) ("Where, as here, the administrator of an ERISA- regulated plan does not allege that it has discretion under the plan to interpret the terms of the insurance policy, judicial review of a denial of benefits entails no deference to the administrator's explanation of the plan ...."); Diaz, 13 F.3d at 456-58 (arbitrary and capricious standard of review applied to trustee rules promulgated pursuant to "broad, discretionary authority" granted to the trustee in the trust instrument); Rodriguez-Abreu  v.  Chase  Manhattan Bank, N.A., 986 F.2d 580, 583-84 (1st Cir. 1993) (de novo standard properly applied where "the -17- relevant  plan  document  did not grant discretionary authority to the Plan Administrator and the Named Fiduciaries did not expressly delegate  their  discretionary authority to the Plan administrator"); Allen v. Adage, Inc., 967 F.2d 695, 697-98 (1st Cir. 1992) (where nothing  in  the Plan indicates that another approach is to be used, it  is  appropriate for a reviewing court to afford de novo review). 2. Jurisdictional Limits in Federal Courts Generally An inquiry that is in essence jurisdictional is an appropriate  early step toward full understanding of the meaning of the constitutional, statutory, and decisional mandates regarding the scope of the authority of federal courts in a case involving judicial review of an out-of-court claims decision. Article III courts and other federal courts are not courts  of  general jurisdiction. See, e.g., Owen Equip. & Erection Co.  v.  Kroger , 437 U.S. 365, 374 (1978). Even when some source of subject-matter jurisdiction appears of record (by reason of complete diversity of citizenship, for example, or the dependence of a claim on some federal question), federal courts are not automatically authorized to adjudicate every kind of related claim a  party  wishes to have decided. Rather, except as to instances of jurisdiction over claims of unconstitutionality of legislation, limits on the scope of jurisdiction of federal courts (other than the Supreme Court of the United States) are partly statutory. E.g. ,  Kokkone n v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).  -18- A  central  characteristic of federal jurisdiction is that it tends to be claim-based, and thus specific to claims, rather than case-based, and thus general to an entire case if the court has jurisdiction over any claim. See American Law Institute, Federal  Judicial Code Revision Project, Tentative Draft No. 1, 33- 34  (Apr.  8,  1997)  (Commentary). The Reporter for this ALI Project, Professor John B. Oakley, in an introductory Memorandum to the Members of the Institute, identifies as an organizing principle used from an early stage of the history of this ALI Project, the observation that:  subject-matte r jurisdiction of the federal district court operates on a 'claim- specific' basis that is concealed and confused  by  the 'action-specific' language of the basic statutory grants of original jurisdiction to the district courts. Id. at xvii. He adds: .... Although the basic statutes purport to confer federal jurisdiction over particular types of 'civil actions,' 'cases,'  'proceedings,' and the like, they have  been  administered on a claim-specific rather than action-specific basis, with the law of supplemental jurisdiction functioning in the background as the mechanism for determining which claims joined to a particular action that do not directly involve the kinds of issues or parties within the scope of Article III are nonetheless within federal judicial power because of their relationship to other claims involving issues or parties that fall within Article III's criteria. Id.  at  xviii. We interpret "action," as used both in this passage and  in  a  passage  of  the  F irestone opinion, quoted above, as meaning "civil  action," not "cause of action." Professor Oakley adds that -19- these background themes are a part of the complex "structure of federal jurisdiction," commonly recognized as involving constitutiona l, statutory, and decisional "tiers" of authorization and limitation. Id. at 36-45. We  conclude  that  a  theme  of claim-specific limitations on the scope of federal judicial power extends also to a distinction between  plena ry jurisdiction, in a broad sense including authority to decide anew on the merits, and a more confined type of jurisdiction over a specific type of claim within the court's jurisdiction. A district court's subject-matter jurisdiction over a claim may be solely for judicial review of an out-of-court decision on the merits of the claim. This kind of limitation is primarily  statutory  in  origin. It may be implicit, for example, in a statutory authorization for judicial review over out-of-court substantive decisions (of many different types) made by governmental agencies, under provisions of the Administrative Procedure  Act,  5  U.S.C.  S 706(2)(A). Also, this kind of limitation may be implicit in statutory provisions for judicial review of special  kinds  of  out-of-court substantive decisions made by private decisionmakers such as those acting under employee benefits plan, making decisions reviewable in this case under ERISA, 29 U.S.C. SS 1132(a)(1)(B) and 1132(c). In a regime characterized in large part by limited jurisdiction,  a  statutory authorization for judicial review of out- of-court decisions does not imply authorization for a court to expand its jurisdiction to a plenary authority to decide, itself, -20- all genuinely disputable factual issues decisive of the merits of claims. This point applies both to a court's acting on its own initiative  and  to  a  court's acting upon a consensual request by the parties that a court accept an expansion of its jurisdiction. We say more about consensual requests in Part II.E, below. Also,  to  understand  fully a source of authority regarding the scope of a court's jurisdiction when judicially reviewing an out-of-court claims decision, one must take account of the distinctive nature of a court's role in judicial review, in contrast  with  the  role  of a court in other civil actions generally. A civil action for judicial review of an out-of-court decision is fundamentally different from a paradigm civil action asserting tort, contract, or property claims, or even alleged rights to equitable or declaratory relief. In cases of judicial review,  ordinarily no right to jury trial is involved, and no need or  authority  exists to make factual findings of the kind regularly made by a jury, or by the trial judge in a nonjury trial. If a need exists for deciding disputable factual issues in  the  course  of  judicial review of an out-of-court decision on the merits  of  a  benefits claim, typically that need is associated with a  dispute  about  the  "record." We turn next to considering disputes of this kind. C. Deciding Disputes About the "Record" 1. The Contrast Between Disputes  About the "Record" and Disputes  About the "Merits" -21- Deciding disputable factual issues about what is or is not properly a part of the "record" for judicial review is fundamentally different from deciding disputable factual issues going to the merits of a benefits claim. The out-of-court decision under judicial review in this case was, or at least in ordinary circumstances should have been, a  decision  on the merits. The standard of judicial review of that decision, in whatever way it may be phrased and described, is to some extent deferential in the sense that the reviewing court is not  to  set  aside  a  factual finding of historical fact for which the record on which the decision was made contained adequate support. Ordinarily the deference to a decision on the merits extends also to deference to an evaluative inference on which the decision  on  the merits depends, at least unless the inference is a mixed-legal-factual inference. Just as appellate courts tend to give  somewhat  less  deference to a trial court's mixed-legal-factual inference -- see, e.g., AIDS Action Comm. of Mass., Inc. v. Massachusetts Bay Transp. Auth., 42 F.3d 1, 7 (1st Cir. 1994) (appellate court accords significant deference to trial court's factual determinations and most of its resolutions of mixed fact/law issues, letting them stand unless they are clearly erroneous, but engages in de novo review of trial court's application of a First Amendment standard to the facts of the particular  case); In re Extradition of Howard, 996 F.2d 1320, 1328 (1st Cir. 1993) ("The standard of review applicable to mixed questions  usually  depends upon where they fall along the degree-of- -22- deference  continuum;  the  more fact-dominated the question, the more likely it is that the trier's resolution of it will be accepted unless shown to be clearly erroneous.") -- so likewise a court engaged  in  judicial review of an out-of-court decision may tend to give less deference to an inference-based decision that appears possibly to have been influenced by a mistake about the existence or  meaning  of an applicable legal rule or about how the legal rule applies in the particular instance. In applying such a less deferential  standard, however, a reviewing court is not authorized to  make,  itself, a new decision replacing every factual finding of the out-of-court decisionmaker that goes to the merits and is challenged. The judicial review of the decision on the merits continues to be to some extent deferential. In contrast, the trial judge's decision of a dispute about the record is typically not deferential.  A factual dispute about the record of an out-of-court decision of a claim under an employee benefits plan may involve a contention, by either party, that the "record" as produced by the decisionmaking entity contains documents or descriptions of non- documentary  evidence not considered before the challenged decision was made, or documents or descriptions of evidence not properly considered (which one party or the other asks the trial court to "strike" or otherwise treat as irrelevant to judicial review). Obversely,  the  dispute  may involve a contention that the record for the out-of-court decision should have included, and did not, -23- additional materials (which one party or the other asks the trial court to rule must be taken into account).  If, after taking such a supplementation of the "record" into account, the trial judge determines that, by reason of departures  from fair process, the challenged out-of-court decision cannot be affirmed, one obvious possibility is an order of remand for  reconsideration by the committee or other entity that made the procedurally flawed out-of-court decision. That form of remedy fits. Concerning a court's obligation generally, in framing relief, to fashion a remedy that fits and does not overburden a party, see, e.g., California v. Yamasaki ,  442 U.S. 682, 702 (1979) (injunctive relief should be no more  burdensome  to  the  defendant than necessary to provide complete relief  to  the plaintiffs); E.E.O.C. v. Astra U.S.A., Inc., 94 F.3d 738, 746 (1st Cir. 1996) (same). First,  the  remedy for the departure from fair process is easily framed to fit within the authorized scope of judicial review.   Second,  the  nature of the remedy matches the nature of the error.   Moreover,  if  the  error was solely an error of the committee or  other  deciding entity, any other form of order is likely not to fit  because  it tends to place an undeserved burden or disadvantage on one party or the other.  We leave to be considered in Parts III.C and III.D of this opinion a defense contention in this case that if the record failed to contain evidence that would have supported plaintiff's -24- claim, plaintiff failed to use her available opportunities to proffer more evidence. To complete an explanation of the contrast between deciding  disputes about the merits and deciding disputes about the record, we must take account of legal authority bearing on who is to decide a dispute about the record and by what procedures. 2. Who Decides? As to who is to decide a dispute about the record, we canvass three possibilities (and variations on each) that are apparent in this case: (1) the out-of-court decisionmaker on remand from the district court; (2) the court or courts where judicial  review  occurs;  and (3) a jury (or trial judge as finder of fact in a nonjury proceeding), guided on the law by the trial judge's rulings, those rulings being subject to correction on appeal. The first possibility (remand to the out-of-court decisionmaker) may sometimes be appropriate, but is likely to result  in  delay,  and  perhaps very extended delay and expense if the dispute is not resolved to the satisfaction of all interested parties,  and  promptly. That kind of delay is inconsistent with the objective  of  providing workers and their dependents an inexpensive and  expeditious method of resolving disputes over benefits claimed under an employee benefits plan. This is one of the multiple objectives underlying ERISA. See, e.g., Quesinberry v. Life Ins. Co. of North America, 987 F.2d 1017, 1023-1025 (4th Cir. 1993) -25- (citing Perry v. Simplicity Eng'g, 900 F.2d 963, 966 (6th Cir. 1990)). The availability of the third possibility -- jury trial --  in  ERISA  cases is a matter on which many courts have spoken but in ways that may reasonably be understood as creating some unresolved conflicts. E.g., compare Turner v. Fallon Community Health Plan, Inc., 953 F. Supp. 419 (D. Mass. 1997), with Padilla De  Higginbotham v. Worth Publishers, Inc., 820 F. Supp. 48 (D.P.R. 1993). We do not speak further to this conflict in this opinion, for  the  reason  that  in  any event the record before us fails to show any disputable issue of fact appropriate for submission to a jury in this case, as we explain below. The use of a jury to resolve disputes about the record for  judicial  review  of  out-of-court decisions in this case would be fundamentally inconsistent with the regime of limited jurisdiction of federal courts. Jurisdiction for judicial review cannot be expanded  to  encompass a jury role inconsistent with limitations on the  court's  jurisdiction. The jury is an arm of the court, and an arm that performs only a designated court function. In a case before the court solely for judicial review of an out-of-court decision, the jurisdiction of the court as a whole, including the jury,  is  limited  to  the  function of determining whether the out-of- court decision is to be affirmed, or is to be set aside as arbitrary  or  capricious, or is to be reconsidered by the committee or other entity designated to decide the merits. -26- A recent decision of the Supreme Court in a very different  context  helps  to explain both the rejection of this third possibility and the distinctive nature of the role of the trial judge in deciding disputes about the record as distinguished from disputes about the merits. That context involved a dispute about who decides an issue of interpretation of a patent claim as to which reasonable persons familiar with both the intricacies of patent law and all the relevant circumstances of the particular case might differ. Justice Souter, in the opinion of the Court, observed that a trial judge is better positioned than a jury to decide this kind of factual issue. Markman v. Westview Instruments,  Inc. ,  116  S. Ct. 1384, 1387 (1996) ("Since evidence of common law practice at the time of the Framing does not entail application of the Seventh Amendment's jury guarantee to the construction  of  the  [patent] claim document, we must look elsewhere to  characterize this determination of meaning in order to allocate it as between court or jury. Existing precedent, the relative interpretive skills of judges and juries, and statutory policy considerations all favor allocating construction issues to the court.").  Much  of  the  reasoning  of  the Court in Westview applies to the  role  of  a  trial  judge in deciding disputes about the record for judicial  review. Compared with judges, jurors typically have less experience  and training relevant to competence to review decisions of  others  with  an  appropriate degree of deference while at the same time assuring no misunderstanding or misapplication of governing -27- law.   And,  historically,  juries have had no part in judicial review of out-of-court decisions. Concerning  factors bearing upon who is better positioned to decide, in determining whether responsibility for deciding a factual  dispute  of  a  distinctive kind should be allocated to juries or instead to judges, the Westview opinion cited other Court decisions made in other contexts, including Miller v. Fenton, 474 U.S. 104, 114 (1985) (when an issue "falls somewhere between a pristine  legal standard and a simple historical fact, the fact/law distinction at times has turned on a determination that, as a matter of the sound administration of justice, one judicial actor is better positioned than another to decide the issue in question."). Other decisions in the 1980s and 1990s have added more illustrations that, by analogy, reinforce the conclusion we reach  in  this case about the role of the judge in judicial review. See, e.g ., Thompson v. Keohane, 116 S. Ct. 457 (1995) (habeas petitioner serving a sentence under a state conviction had confessed, during a two-hour tape-recorded session at the Alaska state trooper headquarters, to killing his former wife; federal district  court denied his petition for habeas relief on the ground that  the  trooper  had  obtained his confession without giving Miranda warnings; the Ninth Circuit affirmed on the ground that the state court's ruling that the accused was not "in custody" for Miranda purposes was a "fact" determination as to which S 2254(d) establishes a presumption of correctness; this "Court has classified  as  'factual  issues' within S 2254(d)'s compass questions -28- extending beyond the determination of 'what happened'"; "[t]his category notably includes: competence to stand trial; and juror impartiality"; "[w]hile these issues encompass more than 'basic, primary,  or  historical facts,' their resolution depends heavily on the trial court's appraisal of witness credibility and demeanor"; "[t]his  Court has reasoned that a trial court is better positioned to make decisions of this genre, and has therefore accorded the judgment  of  the jurist-observer 'presumptive weight'"; even so, we independently review the state "in-custody" determination because "[c]lassifying 'in custody' as a determination qualifying for independent review potentially may guide police, unify precedent, and stabilize the law"); Bose Corp. v. Consumers Union of United States,  Inc., 466 U.S. 485, 501 n.17 (1984) ("A finding of fact in some  cases  is inseparable from the principles through which it was deduced. At some point, the reasoning by which a fact is 'found' crosses the line between application of those ordinary principles of logic and common experience which are ordinarily entrusted to the finder of fact into the realm of a legal rule upon which the reviewing  court  must  exercise its own independent judgment."). See also U.S. Term Limits, Inc. v. Thornton, 115 S. Ct. 1842, 1875 (1995) (Thomas, J., dissenting, joined by Rehnquist, C.J., O'Connor, J., and Scalia, J.) (citing Bose and declaring: "In certain areas, indeed, this Court apparently gives quite little deference to the initial factfinder, but rather 'exercise[s] its own  independent  judgment' about the factual conclusions that should be drawn from the record.").  -29- 3. Methods of Deciding Generally We turn next to considering how a trial judge may go about performing the function of deciding disputes about the record. (a) Non-jury Trial Precedents  support a district court's holding a non-jury "trial" for distinctive and limited purposes associated with judicial  review. An example is an opinion of Justice (then Judge) Breyer for the First Circuit in the context of judicial review of a decision of a governmental agency. E.g., Valley Citizens for a Safe Environment v. Aldridge, 886 F.2d 458, 460 (1st Cir. 1989) (Breyer, J.) ("It could happen that a particular instance of judicial  review  of  an  EIS raises a 'genuine' and 'material' dispute of  facts  that requires a trial: Did the agency know, for example, about some important matter that the EIS ignored? ... However desirable this kind of evidentiary supplementation as an aid to understanding highly technical, environmental matters, its use is discretionary  with  the  reviewing court.") (citations omitted). The practice seems equally applicable to judicial review of out-of- court decisions of private actors, such as the Committees whose decisions are under judicial review in this case. Even  when  a  district  court proceeds with a non-jury trial of this kind, or a proceeding to take "evidence on motion," and determines that it is necessary to make some finding with respect to some historical fact (or to draw some reasoned inference from evidence) as to which a genuine dispute exists, ordinarily that -30- factual  finding  made  by  the trial judge concerns matters bearing on fairness  of  the  process  by which the out-of-court decision was made and not the merits of the claim. A determination by a court that it has jurisdiction to perform this distinctive function does not imply  that  it  must  also  have jurisdiction to find facts relevant to the merits. (b) Evidence on Motion Also, with respect to preparing for ruling on a pending motion,  a  trial judge has, under Federal Rules, explicit authority to convene a kind of evidentiary proceeding that differs from taking evidence at trial under Federal Rule of Civil Procedure 43(a). Evidence on Motions. When a motion is based  on  facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or deposition. Fed. R. Civ. P. 43(d). This procedural authority, however, regarding  the manner of taking evidence, does not expand the trial court's jurisdiction. Rules of procedure apply to how the court may go about performing whatever function and role it is assigned by constitutional, statutory, and decisional law governing the court's jurisdiction.  Federal  Rules  of  Civil  Procedure do not purport to expand the court's jurisdiction from a role of judicial review to a role of plenary adjudication. This is a proposition inherent in the -31- general aim that a court system's procedural rules be focused on fair  and  efficient procedures rather than either jurisdictional or substantive law. And it is a proposition inherent in the claim- based rather than case-based theme of federal subject-matter jurisdiction, explained in Part II.B above. (c) An Issue on Which Decision is Reserved We have not decided, and need not decide today, whether a court, when reviewing a benefits determination, must restrict itself to the "record" as considered by the decisionmaker who interpreted the employee benefits plan. See Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan, 46 F.3d 938 (9th Cir. 1995);  Quesinberry  v.  Lif e Ins. Co. of North America, 987 F.2d 1017 (4th Cir. 1993); Luby v. Teamsters Health, Welfare, and Pension Trust Funds, 944 F.2d 1176 (3d Cir. 1991); compare Davidson v. Prudential Ins. Co. of America, 953 F.2d 1093, 1095 (8th Cir. 1992). Rather, we simply emphasize for clarity that making factual findings about what is or is not properly a part of the "record" for judicial review is fundamentally different from asserting plenary authority to decide the merits of a benefits claim. As stated above, a trial court may take "evidence on motion"  or  convene  a  nonjury "trial" in order to develop a "record" suitable  for  judicial  review of a challenged out-of-court decision. Also, a court may convene either of these kinds of proceedings to -32- determine whether the "record" on which the out-of-court decision was made is complete and, if not, what supplementation is appropriate.  That the trial court has some range of discretion in this respect is reinforced by analogy to precedent. For example, a  Fourth  Circuit decision, calling attention to limitations on the district  court's discretion, also declares that the court has some range of discretion to take evidence.  [W]e  continue to believe that the purposes of ERISA described in our Berry opinion warrant significant restraints on the district  court's ability to allow evidence beyond what was presented to the administrator. In our view, the most desirable approach to the proper scope of de novo review under ERISA is one which balances  these multiple purposes of ERISA. Consequently, we adopt a scope of review that permits the district court in its discretion to allow evidence that was not before the plan administrator. The district court should exercise its discretion, however, only when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision. Quesinberry, 987 F.2d at 1025.  4. Comparison with Summary Judgment Procedures Proceeding in the way just suggested may be better, for very pragmatic reasons, than hearing and deciding a motion or cross-motions for summary judgment. See, e.g., Charlton Memorial Hosp. v. Foxboro Co., 818 F. Supp. 456 (D. Mass. 1993). Summary judgment procedures were designed primarily for prompt and fair determination of factual issues of the kind that go to the merits -33- and would be decided by the jury in a jury trial if genuinely in dispute. Under summary judgment procedure, the movant has the opportunity  and  burden  of making a showing that no material factual issue is genuinely in dispute. The opponent has the opportunity and  burden  of proffering admissible evidence sufficient to support a factual finding favorable to the challenged claim, Fed. R. Civ. P.  56.   Under Rule 56 and local rules implementing its mandates, a litigant  who  fails  to  take advantage of its opportunity by a timely proffer of evidence may be procedurally precluded from doing so later  on  grounds  concerned with fair process. E.g., Mas Marques v. Digital Equip. Corp., 637 F.2d 24, 29-30 (1st Cir. 1980). Invoking summary judgment procedures for factual issues of  the  kind  that  do  not  go to the merits and would not be submitted to a jury in any event is likely to produce misunderstanding and confusion  about  when  and  how the factual dispute is to be resolved. See Charlton Memorial Hosp., 818 F. Supp. at 53-54. If the trial judge  needs  to hear and consider evidence to be prepared to decide the dispute over a factual issue bearing upon the "record" for judicial  review,  Rule  56  constraints do not apply, though the trial judge  has  discretion  to  invoke like procedures. Thus, no formal or procedural barrier exists to the trial judge's deciding disputed factual issues about "the record," in proceedings upon a pretrial motion rather than at trial. Such a pretrial motion need not be labeled as one for summary judgment. If giving the motion that label leads trial lawyers or the trial judge to assume that the judge  can  never decide before trial if a finding with respect to a -34- genuinely disputable fact must be made, this flawed assumption reflects  a  misunderstanding that is likely to create confusion and delay. If, in any event, the decision of a factual dispute about the record is to be made by the judge, not by a jury, the trial judge  is  not  required  to  await trial. Instead, the trial judge may exercise discretion about the method of proceeding, taking advantage of the opportunity for flexibility about scheduling hearings in preparation for the decision about the record. 5. Providing for Discovery and Proffers of Relevant Evidence Of  course,  the  trial  judge should (and absent some ground of preclusion, must), before deciding a disputable factual issue that  may  be  decisive of a dispute about the "record", give parties a fair opportunity to discover and present relevant evidence bearing upon the issue. Ordinarily it is a good practice to do this by an order of record that clearly specifies the time within which any proffer is to be made, and thus reduces any risk of misunderstanding. Once  this  requirement  of  fair process has been satisfied, ordinarily it is in the public interest and the interest of the parties  that  factual  disputes of the kind that are to be decided by the trial judge, and in no event by a jury, be decided sooner rather  than  later. Exceptional circumstances of a particular case may  make  deferral appropriate, however, and this opinion is not to be interpreted as stating any hard-edged rule of practice in this respect.   We  have  called  attention to these matters in this opinion -35- solely  for  the purpose of clarifying the nature of judicial review in respects that appear to have generated misunderstandings. D. Independent Claims and Overlapping Elements 1. Various Types of Independent Claims For completeness, we take note of another source of potential misunderstanding, even though it does not apply to this case. In some instances, an independent claim over which a district court does have plenary jurisdiction for trial on the merits may include, among the elements of that claim or a defense to  it,  a  factual issue that is the same or almost the same as some factual  element of a claim for benefits under an employee benefits plan, decisions regarding which are subject to judicial review rather than trial on the merits. In such an instance, the court has jurisdiction to try the independent claim, even though the court's role in relation to the plan benefits claim is limited to judicial review. Some potential illustrations are identified immediately below.  2. Forbidden Retaliatory Motive or Other Discriminatory Animus An  independent  claim  may  arise when a party contends that gender  or  racial animus was a motive for termination of employment in retaliation for previous protected conduct of the employee in asserting that conditions of employment were discriminatory. If (1) the party making such a contention demands a jury trial and proffers  sufficient evidence to show a genuine dispute of material -36- fact, and (2) jury trial of the independent claim is appropriate under the law governing trial of that claim, the trial judge has two very distinct and materially different responsibilities. One is to determine, "as a matter of law," whether the proffered evidence is sufficient, if credited by the jury, to support the independent  claim of discriminatory termination of employment and, if so, to submit that claim to the jury by an appropriate charge and verdict form. The trial judge's other responsibility is to perform the function of judicial review of the challenged out-of- court decision of the claim for benefits under the employee benefits plan. For the reasons explained in Parts II.B and II.C above, this responsibility continues to be performed without participation of the jury, even though the independent claim that is before the court in the same civil action is tried to a jury. 3. Violation of Obligation to Provide Plan Information Another  kind  of  claim  that, in appropriate circumstances, might  be  treated  as  an  independent claim is a claim of violation of the  ERISA  requirement of production of plan information, 29 U.S.C. S 432(c). We do not probe this possibility in this case, because Recupero  has  not  claimed  a violation of this provision; instead, as explained in Part III.D of this opinion, below, she has claimed a violation of notice requirements, with respect to her opportunity to challenge a committee decision, under 29 U.S.C. S 1133. -37- 4. Overlapping Components of an Independent Claim and a Claim Under Judicial Review It is possible that in some circumstances some factual component of an independent claim, or the measure of recovery if that claim is proved, will closely coincide with a component decisive of the merits of the out-of-court decision that is under judicial review. If this happens, a host of debatable issues may exist concerning claim or issue preclusion, the right to jury trial, and procedural rules and practices bearing on case management in the district court. No  independent  claim  was  alleged in the complaint in this case,  however, and we do not undertake to address any of the added complexities  that  arise  from joinder of a claim for judicial review and  some  independent claim. This case presents only a question as to scope of jurisdiction in a more typical setting of judicial review of an out-of-court benefits decision. E. Consensual Arrangement for Claims Determinations In this case, the parties assigned to the EBC in the first instance, and to the EBRC in the second instance, the function  of  making decisions about the merits of individual claims to  benefits  under  the  plan. This kind of consensual arrangement is legally permissible. See Firestone, 489 U.S. at 115. Here,  however,  each  party is in essence asking this court to construe plan provisions as consensually overriding constitutional and statutory limits on the jurisdiction of the courts,  or  to hold that an opposing party is estopped or precluded -38- from asserting that the plan provisions do not authorize plenary consideration of plaintiff-appellant's claims on the merits. Included is the request that the district court make factual findings  on  any  genuinely disputable issues material to the outcome on the merits. When the law authorizes parties to make their own consensual  arrangement  for deciding individual claims for benefits, ordinarily the parties may prescribe their own set of rules about how decisions are to be made, as long as they do not transgress prescribed legal limits on the scope and nature of consensual arrangements. E.g., Mitsubishi Motors Corp. v. Soler Chrysler- Plymouth, Inc., 473 U.S. 614, 628-39 (1985)(parties' agreement to arbitrate anti-trust claims is enforceable absent a showing of circumstances that would warrant setting aside the forum selection clause). If, however, the parties attempt by their consent to expand the scope of a district court's jurisdiction beyond that authorized by law, their attempt is legally unenforceable in this respect for the reasons explained in Parts II.B and II.C of this opinion. F. Summary of Conclusions Regarding Scope of Jurisdiction The  constitutionally  and  statutorily limited jurisdiction of federal courts cannot be expanded by a stipulation or joint request of the parties that the courts become their privately- appointed alternative to the method of adjudication available to them under law. Ordinarily, claims benefit determinations of -39- consensually designated private decisionmakers on whom plan provisions confer authority to exercise discretion are subject to judicial  review  under  an  arbitrary and capricious standard, but not to plenary determinations on the merits. In  contrast,  the decision of disputes about the "record" for  judicial  review  ordinarily are within the scope of the district court's  jurisdiction,  and the trial judge's role ordinarily extends to deciding factual as well as legal components of such a dispute about the "record." Independent claims in addition to a claim for judicial review may present added complexities, but we need not and do not address these matters because no independent claim is asserted in this case. With these fundamental characteristics of the legal system as background, one may locate the legal and factual issues of  a  particular  civil  action in the larger legal landscape. In the remainder of this opinion, we consider each of the material contentions  of the parties regarding the precise way in which this controversy has proceeded both before and after the filing of the civil action in the United States District Court for the District of Massachusetts. III. Particular Contentions in This Case A. Introduction The  parties  to  this  appeal have acknowledged, and we have noted, that some aspects of the out-of-court decisions of the NET -40- Committees must be judicially reviewed under an "arbitrary and capricious" standard. Other aspects of the challenged decisions must be decided either as matters of law are decided or under a standard less deferential than an "arbitrary and capricious" standard. Also, as proceedings have developed both before and after the filing of the civil action, some issues earlier in controversy have become moot or an opportunity for challenge has been lost under rules of procedural preclusion. In this Part III, we discuss separately these different kinds of issues, beginning with asserted violations of the applicable "arbitrary and capricious" standard. B. Alleged Violations of "Arbitrary and Capricious" Standard Having determined that the role of the courts with respect to typical claims under an employee benefits plan is jurisdictionally limited to review, if a plan administrator or fiduciary  was given discretion to decide particular claims, we now consider  whether Recupero has shown that the Committees created to decide claims of the type at issue in this case acted arbitrarily and capriciously. Recupero argues:  Ms. Recupero was seriously injured in an elevator accident at her workplace while she was on-duty and being paid by the company. At the time of her accident she was in the course of her employment and was  under  the direction and control of her employer. The only reasonable meaning of the Plan language is that Ms. Recupero sustained  an  "accident" and not "sickness" and  it  was  arbitrary and capricious of the Plan to deny her "accident" disability claim. -41- (Appellant's Br. at 6-7.) Recupero contends that she was: ... en route to obtain coffee in the building lobby at the direction of her supervisor on company time at the time of the accident. She made ... [an] adjustment [from her usual time for a break] at the direction of her supervisor for  the  sole  purpose of furthering, and in direct  connection with, the performance of her duties to enable her to establish a conference call with a customer at a time when she would otherwise have been away from her usual work station.  (Id.  at  13).  Thus, she argues, she was "on-duty" at the time that she sustained her injury, and is entitled to "accident benefits." (Id. at 14.) The  defendant-appellee counters that "[i]t is undisputed that  Recupero  was  injured during break time, after leaving her work station while on an elevator en route to a coffee shop." (Appellees' Br. at 7.) This fact, NET contends, shows that Recupero  was  not  "solely" and "directly" engaged in the performance of duties at the time of the injury. (Id.) Thus, the defense argument goes, the Committees did not act arbitrarily and capriciously in determining that Recupero was not entitled to "accident benefits." (Id.) As already noted, the district court ruled in favor of NET  on  this  issue.   The  district court rejected Recupero's argument that, because she was taking her break at the request of her employer, her injuries should entitle her to "Accident Disability Benefits." The court stated: Recupero's argument is predicated on the assertion that she was taking her coffee -42- break a half hour early at the request of her supervisor in order to accommodate a job-related phone call which she was expecting. Such a fact is not properly before the court for two reasons. First, the  court,  when applying the arbitrary and capricious standard of review, may only review the actions of the fiduciary in light of the evidence which was before it at the time it made its decision. It does not appear that the NET Benefits Office, the EBC or the EBCRC had the benefit of considering this fact. (#20, Exh.  2,  Affidavit of Richard Waldron, q7). Second, this is a "mere allegation" unsupported  "by affidavits or as otherwise provided" under Fed. R. Civ. P. 56(e) since Recupero offers no evidence to this court to support this contention. (Recupero v. New England Telephone & Telegraph Co., Civil Action No. 94-12266-MLW, Memorandum and Order, Sept. 20, 1996 at 9 n.5.) The  EBC  and  the EBRC decided that Recupero qualified for "Sickness  Disability Benefits" only. The district court correctly concluded that this decision was not arbitrary and capricious. Three lines of reasoning support this conclusion.  First. The court below correctly determined that Recupero had not proffered evidence before the EBC or EBRC of any irregularity in the break from work that she was on when the incident occurred. (Id.) Nothing in the record before the Committees, the record before the district court, or the record before  this  court  suggests otherwise. If Recupero did not proffer, before the Committees, factual support for a contention that the circumstances of the incident brought it within the meaning of an "accident"  because she was taking her break at a specific time, at the  behest  of her supervisor, in order to allow her to perform her -43- duties  at  a  later  time,  then the record before the EBC and the EBRC was not sufficient to support a court determination, on judicial review, that the decisions of the Committees were arbitrary and capricious. Second.   Despite  the  difficulties of drawing bright lines of  separation and fitting every conceivable circumstance of injury into either the category of "accident" or the category of "sickness,"  the  Committees did not act arbitrarily and capriciously when interpreting "on-duty" to exclude break time, regardless of the nature of any reason or reasons for the break. A plan may prescribe a definition of "on-duty" that takes into account the myriad  of  possible  ways  in which and times at which an employee may be injured. A plan that does so may require of the out-of-court decisionmakers, in deciding a particular claim, that they make an evaluative determination rather than a rigorously logical application of bright-line rules that leave no choice, even reasoned  choice, in arriving at a decision concerning the merit of a particular claim.  It is true that in the context of trial of a paradigm tort  or  contract claim, "evaluative issues" often go to a jury for decision. See, e.g., Springer v. Seamen, 821 F.2d 871, 876 (1st Cir.  1987)  (in tort law, not only ordinary fact questions but also "evaluative applications of legal standards (such as the legal concept of 'foreseeability') to the facts are properly jury questions"), cited with approval in Dedham Water v. Cumberland Farms Dairy, 972 F.2d 453 (1st Cir. 1992).  -44- In the context of judicial review of out-of-court decisions, however, if employee benefit plan provisions confer discretion on an out-of-court decisionmaker, ordinarily the evaluative determinations of that decisionmaker are judicially reviewed under a deferential standard, as explained in Parts II.B and II.C of this opinion. Section  5(5)  of the plan before us in this record is one of the provisions the interpretation of which was challenged in this case. It provides: Relationship of Injury to Employment. Accidental  injuries shall be considered as arising out of and in the course of employment only where the injury has resulted solely from accident during and in direct connection with the performance of duties to which the employee is assigned  in  the service of the Company, or was assigned by the Former Affiliate or Associated or Allied Company from which the employee was reassigned as of January 1, 1984, or which he is directed to perform by proper authority, or in voluntarily protecting the Company's property or interests. There must be a clear and well-established history of the cause and circumstances of injury accidentally inflicted, which must be sufficient to produce the alleged injury, and there must be satisfactory evidence that such injury renders the employee unable to perform his duty in the service of the Company. (Appellees' Br. at 59-60) (emphasis added). In view of the emphasized phrase in this passage quoted from the plan, we cannot say  that  the  district  court erred in its interpretation of the plan as supporting NET's position in this appeal.  -45- Third.   Recupero apparently bases her argument, in part, on an assumption that because she was eligible for worker's compensation, her injury should be treated, as a matter of law, as having occurred "on-duty." This assumed premise is erroneous, as a matter of law. Neither ERISA nor any other source of authority declares that the standards of eligibility for workers' compensation benefits and accident disability benefits under an ERISA-regulated  plan  be  the same. See Pagan v. NYNEX Pension Plan, 52 F.3d 438 (2d Cir. 1995). Further, the plan provisions in this case do not explicitly prescribe a test for "on-duty" status that mirrors the test commonly used in worker compensation systems.  For these reasons, we conclude that the district court did  not  err  in deciding that the decisions of the EBC and the EBRC were not arbitrary and capricious.  C. Recupero's Request for Reclassification of Benefits We take note that plaintiff is not seeking "Sickness Disability  Benefits"  beyond those already paid to her. Rather, she is asking merely that we order, or direct the district court to order, that the benefits already paid to her as "Sickness Disability Benefits" be declared to be reclassified as "Accident Disability Benefits." (Appellant's Br. at 1 n.1.)  Recupero  does not argue, nor do we know of any ground on which she could creditably do so, that she was entitled to such a reclassificat ion decision by the district court, or is entitled to have  this  court  declare  such a reclassification. Instead, she asks -46- this  court,  as a matter of discretion in the interests of justice, to  declare  the  reclassification or order the district court to make a discretionary decision regarding reclassification. We are not persuaded that we should exercise discretion in this way at this late stage in the development of proceedings regarding Recupero's claim for benefits, even if we were to determine  that we have jurisdiction to do so. Recupero has failed to  place  before us, or before the district court, a record showing that  she  made  a  request  that the Committees make a determination of this  type.   Nor has she called to our attention any good cause for determining that she should be allowed to present this request at this  late  point in the face of the apparent unfairness of allowing a  claimant  to  proceed  on  one set of contentions to the threshold of final resolution and only then assert a new theory of claim. In these circumstances, without undertaking to resolve very substantial  doubts about our jurisdiction to entertain such a late request  for  a  declaration of "reclassification" of benefits she was paid and accepted as "Sickness Disability Benefits," we conclude that her request must be denied as untimely. This conclusion is amply supported by precedent. See, e.g., United States v. Bongiorno, 106 F.3d 1027, 1034 (1st Cir. 1997) (constitutional arguments not raised in the lower court cannot be advanced on appeal);  Armstrong  v.  Jef ferson Smurfit & Corp., 30 F.3d 11, 13 n.4 (1st Cir. 1994) (argument that reimbursement of taxes paid in lump-sum payments could be benefits under ERISA waived when made for the first time on appeal.) -47- D. Interpretation of Plan Provisions As a general rule (independently of the special characteristics of ERISA claims cases), disputes over interpretation  of  a  document (or set of documents taken together as a  unit)  are  decided as matters of law are decided. See, e.g., Den Norske  Bank,  A.S.  v.  Firs t Nat. Bank of Boston, 75 F.3d 49, 52 (1st Cir.  1996)("Normally, contract interpretation is a question of law for the court."). And, as a general rule, courts may determine that  an  out-of-court decision was arbitrary and capricious if that decision was explicitly or implicitly founded on an error of law. E.g. ,  United  States  v.  Me mbers of Estate of Boothby, 16 F.3d 19, 21 (1st Cir. 1994) ("In scrutinizing administrative actions, a reviewing court is free to correct errors of law, but, otherwise, the court is limited to a search for arbitrary or capricious behavior."). If a genuine dispute exists regarding existence of a contract, ordinarily that issue "is a question of fact, for the jury ... [unless] the evidence consists only of writings, or is uncontroverted," in which even "the court can decide the issue." American Private Line Services, Inc. v. Eastern Microwave, Inc., 980 F.2d 33, 35 (1st Cir. 1992). Even if the core of the dispute is what interpretation to give to a document or to uncontroverted oral communications, in exceptional circumstances an issue of interpretatio n on which reasonable persons may differ is submitted to  a  "trier  of  fact."   Bo ston Edison Co. v. F.E.R.C., 856 F.2d 361, 367 n.3 (1st Cir. 1988). But this exception cannot be invoked by -48- a  party  who  has failed to make any proffer of documentary or other evidence  sufficient  to  support a determination of ambiguity in some respect material to disposition on the merits of the controversy before the court. See, e.g., Donoghue v. IBC USA (Publications), Inc., 70 F.3d 206, 215 (1st Cir. 1995) (a hypothetical allegation of meaning, whether ambiguity is alleged or not, is inadequate to present a genuine dispute as to a material issue; even if a party is "claiming to benefit from ambiguity (for example, by being allowed to proffer extrinsic evidence supporting its interpretatio n) [that party] must show ambiguity in the meaning of the agreement with respect to the very issue in dispute"). The record before us in this case is devoid of any such proffer. For these reasons, we conclude, without deciding unsettled issues about jury trial in ERISA cases generally (see decisions cited in Part II.C.2, supra), that in no event would it be  proper  in  this  case  to submit to a jury issues of interpretation of the NET plan provisions bearing upon "Accident Disability Benefits" claimed by Recupero. Moreover, such an interpretive question could go to a jury only if the court, in which the jury sits,  has  plenary  jurisdiction. For the reasons explained in Parts II.B  and  II.C of this opinion, the exceptional allowance of a jury decision on an interpretive question does not apply when the court's role is limited to judicial review of an out-of-court decision.  -49- E. Futility of Remand NET argues that the same outcome on issues of interpretation of NET plan provisions must be reached on another ground.   The  argument is that the record before the district court was sufficient, and the record on appeal is sufficient, for this court to determine that remand would be futile because, from undisputed  facts  that  Recupero does not suggest could be challenged if  remand  were ordered, it is apparent that Recupero's claim fails on the merits. We conclude that, though from a limited perspective, the decision of this matter might have seemed debatable, closer probing supports this defense position with respect to issues concerning the meaning and application to this case of the NET plan provisions regarding "Accident Disability Benefits."  Recupero  has  entirely failed, in proceedings before this civil action was filed, in proceedings in the court below, and on appeal, to make any proffer of relevant evidence that could be determined to be sufficient to support her contentions that plan provisions on eligibility for Accident Disability Benefits should be interpreted in a way that would present a genuinely disputable factual issue bearing upon her claim on the merits.  F. Denial of Notice As an independent basis for rejecting Recupero's claim for some form of relief because of alleged violation of 29 U.S.C. S  1133  with  respect to notice about how to pursue her rights under -50- the plan after denial of her benefits claim, NET contends that Recupero  failed  to  proffer any admissible evidence, at any stage of proceedings, to support any finding of prejudice to her. (Appellees' Br. at 9, 20-21.) The district court determined that Recupero  had  not  proffered evidence sufficient to support a finding of prejudice in any relevant sense. (Memorandum and Order, Sept. 20, 1996 at 14-15.)  In effect, Recupero has attempted to demonstrate prejudice by arguing that it is inherent in the circumstances of any claim of the type she has made, rather than by proffering evidence, either to the Committees or to the district court, to show that in some special way the circumstances of her case were unique  or  at  least exceptional. We conclude that allowing a claim for relief because of inadequacy of formal notice without any showing that a precisely correct form of notice would have made a difference would result in benefit claims outcomes inconsistent with ERISA aims of providing secure funding of employee benefit plans.  In these circumstances, we conclude that the determination by the district court that Recupero failed to show prejudice in a relevant sense is unassailable, regardless of whether we treat it as a factual finding by the district court or instead as a determination of insufficiency of proffered evidence "as a matter of law."  -51- CONCLUSION For the reasons stated in this opinion, it is ORDERED: The  judgment  of  the  district court is AFFIRMED. Costs of the appeal are awarded to Appellees. -52-